United States District Court
Southern District of Texas
**ENTERED**
September 30, 2021
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# VICTORIA DIVISION

| | | |
|---|---|---|
| **ROSENDO JOSEPH ROSALES, III,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 6:20-cv-00030** |
| | § | |
| **INDUSTRIAL SALES & SERVICES,** | § | |
| **LLC and BERNARD GOCHIS,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Rosendo Joseph Rosales, III, has filed suit under the Fair Labor Standards Act ("FLSA") against Industrial Sales & Services, LLC ("ISS") and Bernard Gochis ("Gochis") alleging that they failed to pay overtime wages to him and other ISS employees. (Dkt. No. 26). In his Motion for Class Certification & Expedited Discovery[1] ("Motion for Certification"), Rosales petitions the Court to certify a collective consisting of himself and other ISS employees who were denied overtime pay. (Dkt. No. 42); (Dkt. No. 46). ISS and Gochis argue that certification is improper because Rosales failed to proffer sufficient evidence that he and the other ISS employees are similarly situated and that this is an individualized inquiry. (Dkt. No. 50 at 4); (Dkt. No. 43 at 15). For the reasons set forth below, the Court **DENIES WITHOUT PREJUDICE** the Motion for Certification.

---

[1]    Although the title of the Motion for Certification references a request for "expedited discovery," there is no such request elsewhere in the briefing. *See* (Dkt. No. 42); (Dkt. No. 46).

## I.    BACKGROUND

### A.    ROSALES'S LAWSUIT

Rosales filed this lawsuit on May 12, 2020, and has twice amended his Complaint.[2] ISS produces engineered screwpiles for commercial construction projects including power stations, oil and gas refineries, and natural gas power plants.  (Dkt. No. 26 at ¶ 13); (Dkt. No. 42-1 at ¶ 3).  Rosales worked for ISS from September 2017 to July 2019.  (Dkt. No. 26 at ¶ 15); (Dkt. No. 42-1 at ¶¶ 4–5).  At ISS, Rosales worked as a "laborer, machine operator and/or welder," whose "primary duties did not include office or nonmanual work."  (Dkt. No. 26 at ¶¶ 16, 33).

According to Rosales, ISS was not his only "employer."  *See* (*Id.* at ¶ 17).  Indeed, he alleges that Gochis, who "is the manager of ISS . . . was also [his] employer."  (*Id.*). Rosales alleges Gochis played a major role at ISS.  *See* (*Id.* at ¶¶ 17–19).  Specifically, he states Gochis's duties included being "responsible for ISS' pay practices and exercis[ing] substantial control over ISS' finances and operations" and "implement[ing] ISS' pay practices and retain[ing] control over those practices."  (*Id.* at ¶¶ 17–18).  Moreover, "[a]s the manager of ISS, Gochis had authority over ISS' personnel decisions such as the hiring and firing of ISS employees, as well as determining employee work schedules."  (*Id.* at

---

[2]    Gochis moved to dismiss the claims against him in Rosales's Original Complaint.  (Dkt. No. 13).  Rosales responded by amending his Complaint, (Dkt. No. 15); (Dkt. No., 16), thereby mooting Gochis's Motion to Dismiss.  Once again, Gochis moved to dismiss the claims against him in Rosales's First Amended Complaint.  (Dkt. No. 18).  The Court granted Gochis's Motion to Dismiss Rosales's First Amended Complaint and ordered Rosales "to file an amended complaint addressing the issues raised in [Gochis's] Motion . . . ."  (Dkt. No. 23).  In response, Rosales filed a Second Amended Complaint.  (Dkt. No. 26).

¶ 19).  And, as it happens, "Gochis personally terminated Rosales in August 2019 and made other hiring and firing decisions throughout Rosales' employment with ISS."  (*Id.*).

Rosales also alleges that he and his fellow co-workers were paid on an hourly basis and typically worked more than forty hours per week.  (*Id.* at ¶¶ 25–30, 48); (Dkt. No. 42-1 at ¶¶ 8–13).  Rosales asserts that ISS did not pay its employees one and one-half times their regular hourly wage for the time they worked in excess of forty hours.  (Dkt. No. 26 at ¶¶ 29–30, 48); (Dkt. No. 42-1 at ¶¶ 11–13).  Instead, Rosales contends that ISS paid its employees their regular hourly wage for all hours worked.  (Dkt. No. 26 at ¶¶ 30, 48); (Dkt. No. 42-1 at ¶ 12).

In his Second Amended Complaint, Rosales states that he brings this FLSA action on behalf of himself and "all current and former employees of [ISS and Gochis] who were paid at the same rate of pay for all of the hours they worked during the past three years . . . ."  (Dkt. No. 26 at 1).  He asserts that "[a]ll hourly workers employed by ISS during the last three years are similarly situated to" him "because they (1) have similar job duties; (2) regularly worked or work in excess of forty hours per week; [and] (3) were or are not paid overtime for the hours they worked or work in excess of forty per week as required by 29 U.S.C. § 207(a)(1)[.]"  (*Id.* at ¶ 48).  And, as a result, Rosales alleges that he and those similarly situated to him are "are entitled to recover back wages, liquidated damages and attorney's fees and costs from ISS and Gochis under 29 U.S.C. § 216(b)."  (*Id.*).

### B.   OTHERS JOIN ROSALES'S LAWSUIT

Rosales is not alone in alleging that ISS and Gochis are liable for violating the FLSA.  Indeed, other ISS employees have joined his lawsuit.  *See* (Dkt. No. 3); (Dkt. No.

39).  The first to join was Leo Butler, Jr. ("Butler").  (Dkt. No. 3).  A second individual joined Rosales's lawsuit but later withdrew his consent, leaving Rosales and Butler as the only remaining Plaintiffs.   (Dkt. No. 39); (Dkt. No. 41).

**C.   ROSALES MOVES FOR CERTIFICATION OF THE PROPOSED COLLECTIVE**

**1.    Rosales's Arguments and Exhibits in Support of Certification**

With one person having joined his FLSA action against ISS and Gochis, Rosales now asks this Court to certify a collective consisting of "[a]ll laborers, machine/equipment operators, and welders employed by [ISS] during the last three years" ("Proposed Collective") and issue notice of the lawsuit to potential opt-in plaintiffs.[3]  (Dkt. No 42 at 9).  To support his argument that he and members of the Proposed Collective are similarly situated, Rosales asserts that, "[p]ay period after pay period, [members of the Proposed Collective] worked 50-60 hours per week or more but were not paid overtime in violation of 29 U.S.C. § 207(a) . . . .   Instead, ISS paid its employees, such as laborers, machine/equipment operators, and welders, straight time for overtime."  (*Id.* at 12) (citations omitted).  In sum, Rosales argues that the Court should certify his Proposed Collective because he and other ISS employees have been harmed by ISS's pay practices and are therefore "similarly situated."   (*Id.* at 8–10, 12, 15–16).  According to Rosales, he and members of the Proposed Collective are similarly situated,

---

[3]    And, should the Court decide to certify the Proposed Collective, Rosales submitted a draft notice that he encourages the Court to issue to make potential opt-in plaintiffs aware of his lawsuit against ISS and Gochis ("Proposed Notice").  (Dkt. No. 42-7).

even if they had different job responsibilities, because they all "worked in excess of forty hours per week but were not paid overtime in violation of" the FLSA.  (*Id.* at 15–16).

To bolster his case for certification, Rosales proffers several categories of exhibits. The first category consists of sworn declarations from Rosales and Butler.  (Dkt. No. 42-1); (Dkt. No. 42-2).  The allegations in Rosales's Declaration are similar to those he lodged in his Second Amended Complaint, although, in his Declaration, he elaborates on his primary job responsibilities and ISS's pay practices.  *Compare* (Dkt. No. 26) *with* (Dkt. No. 42-1).  In his Declaration, Rosales states that, as a "laborer, machine/equipment operator, and welder" for ISS, his "job duties were primarily manual labor in nature and included cutting, moving, tagging and welding pipe, operating a backhoe, and operating a skid-steer loader" but "required no managerial skill or power."  (Dkt. No. 42-1 at ¶¶ 6–7).

Rosales also comments on ISS's pay practices, opining that "ISS has not paid laborers, machine/equipment operators, and welders, including [himself], for all hours worked or overtime for hours worked over forty in a workweek."  (*Id.* at ¶ 12).  Instead, Rosales states that ISS "paid [him and similarly situated employees] at [their] normal hourly rate for all hours worked."  (*Id.*).  So, "[i]n other words, employees like [Rosales] were paid straight time for overtime."  (*Id.*).  Rosales also shares his impression of ISS's pay practices based on his experiences and conversations with his coworkers, alleging that ISS's practice of paying straight time for overtime "applied to all employees employed by ISS," regardless of what they "did or [their] position with ISS."  (*Id.* at ¶ 13).  Moreover, Rosales "believe[s] there would be others that would want to join this lawsuit if they were made aware of it and given an opportunity to join."  (*Id.* at ¶ 14).

The allegations in Butler's Declaration are very similar to those in Rosales's. *Compare* (Dkt. No. 42-1) *with* (Dkt. No. 42-2).  Like Rosales, Butler's job duties were "primarily manual labor in nature" and "required no managerial skill or power." *Compare* (Dkt. No. 42-1 at ¶ 7) *with* (Dkt. No. 42-2 at ¶ 7).  But unlike Rosales, who describes himself as a "laborer, machine/equipment operator, and welder," whose "job duties were primarily manual labor in nature and included cutting, moving, tagging and welding pipe, operating a backhoe, and operating a skid-steer loader," Butler states he was a welder and his job duties consisted of "cutting, and welding pipe, as well as operating machinery." *Compare* (Dkt. No. 42-1 at ¶¶ 6–7) *with* (Dkt. No. 42-2 at ¶¶ 6–7).

In addition to the two Declarations, Rosales attaches four timesheets—two belonging to Butler and two belonging to him.  (Dkt. No. 42-3); (Dkt. No. 42-4).  The timesheets purport to show that Butler and Rosales were paid a regular hourly wage for the overtime hours they worked during four weeks in 2017 and 2018.  *See* (*Id.*).  And, to further support that he and Butler were underpaid for the overtime hours they worked, Rosales attaches his 2017, 2018, and 2019 W-2s and Butler's 2018 and 2019 W-2s.[4]  (Dkt. No. 42-5); (Dkt. No. 42-6).

---

[4]   Rosales also attaches other exhibits that are not relevant to determining whether the Court should certify the Proposed Collective.  Specifically, he attaches the Proposed Notice, an unsigned affidavit, and two Texas Franchise Tax Public Information Reports tending to show that Gochis is an officer of both ISS and Alpine Site Services, Inc.  (Dkt. No. 42-7); (Dkt. No. 42-8); (Dkt. No. 47); (Dkt. No. 47-1).

2.   **The Defendants' Arguments and Exhibits in Opposition to Certification**

ISS and Gochis disagree that Rosales and members of the Proposed Collective are "similarly situated" and offer arguments and evidence of their own in opposition to Rosales's Motion for Certification.  (Dkt. No. 43 at 6–7, 12–15).  ISS and Gochis assert that Rosales fails to even attempt to show that members of the Proposed Collective are covered by the FLSA's overtime-pay protections.  (*Id.* at 12–15).  And, even if he had offered such proof, determining whether each and every member of the Proposed Collective is covered by the FLSA, according to ISS and Gochis, would require the Court to engage in a highly individualized inquiry, rendering certification inappropriate.  (*Id.* at 14–15).

As to the former argument, ISS and Gochis point to the Motor Carrier Act exemption ("MCA exemption"), which exempts certain employees from the protections provided by the FLSA's overtime-pay provisions.[5]  (*Id.* at 12–14).  ISS and Gochis state that Rosales "and the rest of the putative collective were appropriate[ly] classified as exempt," (*id.* at 14), a statement that Rosales does not dispute in his Reply, (Dkt. No. 46).  The issue, then, according to ISS and Gochis, is whether Rosales and members of the Proposed Collective similarly qualify for an exception to the MCA exemption — specifically, the "small-vehicle exception" — thereby entitling them to the FLSA's overtime-pay protections.[6]  (Dkt. No. 43 at 14).

---

[5]    For a description of the MCA exemption, *see infra* Section II.A.2.c.

[6]    For a description of the small-vehicle exception to the MCA exemption, *see infra* Section II.A.2.c.

In opposition to certification, ISS and Gochis offer evidence showing that *all* members of the Proposed Collective are *not* covered by the FLSA's overtime-pay protections, *see* (Dkt. No. 43-1); (Dkt. No. 43-2), which they contend Rosales fails to rebut, (Dkt. No. 50 at 4). More specifically, ISS and Gochis offer evidence showing that Rosales and Butler are employees subject to the MCA exemption and therefore do not qualify for the FLSA's overtime-pay protections. *See* (Dkt. No. 43-1); (Dkt. No. 43-2). Assuming the MCA exemption applies, ISS and Gochis argue that Rosales fails to offer *any* evidence that he and members of the Proposed Collective are similarly covered by an exception to the MCA exemption. (Dkt. No. 50 at 4). And even if Rosales offered *some* evidence that he and members of the Proposed Collective are similarly covered by such an exception, certification is still inappropriate, according to ISS and Gochis, because determining whether a member of the Proposed Collective is excepted from the MCA exemption requires the Court to engage in a highly individualized inquiry.[7] (Dkt. No. 43 at 14–15); (Dkt. No. 50 at 4).

### D.   THE FIFTH CIRCUIT ADOPTS A NEW LEGAL STANDARD

While Rosales's Motion for Certification was pending before the Court, ISS and Gochis alerted the Court to the Fifth Circuit's January 12, 2021 decision in *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021), and ISS and Gochis argue that this changes the standard the Court must apply to determine whether to certify the Proposed Collective. (Dkt. No. 51). They also argue the decision in *Swales* bolsters their opposition

---

[7]   The evidence ISS and Gochis offer to support these arguments is discussed below. *See infra* Section II.A.2.c.

to certification.  (*Id.* at 2–3).  Rosales disagrees.[8]  (Dkt. No. 53).  He argues that, "except for a small subset of cases, *Swales* did not change much," noting that "[c]hanges in the law happen incrementally—not radically."[9]  (*Id.* at 2).

### E.   ROSALES MOVES TO EXTEND THE SCHEDULING ORDER DEADLINES

Several months after the Fifth Circuit issued its decision in *Swales*, Rosales filed a Motion to Extend Deadlines.  (Dkt. No. 59).  In this Motion, Rosales petitions the Court to extend the remaining scheduling order deadlines, including the deadline to complete discovery.  (*Id.*).  The deadline to complete discovery was June 15, 2021, which was two days before Rosales filed his Motion to Extend Deadlines.  *See* (Dkt. No. 35); (Dkt. No. 59).

ISS and Gochis oppose Rosales's request to extend the remaining scheduling order deadlines.  (Dkt. No. 60).  They argue, among other things, that Rosales's request fails to comply with the requirements for such requests set forth in the Scheduling Order and this Court's procedures.  (*Id.* at 1 n.1).

## II.   DISCUSSION

### A.   MOTION FOR COLLECTIVE CERTIFICATION

The Court now addresses Rosales's Motion for Certification.  In doing so, the Court first discusses the FLSA, the certification standards that preceded *Swales*, and the *Swales*

---

8    On January 23, 2021, the Court ordered Rosales to respond to ISS and Gochis's Notice of Supplemental Authority in which they alerted the Court to the *Swales* opinion.  (Dkt. No. 52).  On February 12, 2021, he did.  (Dkt. No. 53).

9    The Court held a hearing on March 1, 2021, at which the Court heard argument on the effect that the *Swales* decision has on this Court's determination as to whether the Proposed Collective should be certified.  *See* (Dkt. No. 54).

decision. The Court then applies the standard set forth in *Swales* to the facts of this case and concludes, for the reasons stated below, that certification of the Proposed Collective is inappropriate.

### 1.   Legal Standard

a.   FLSA

The FLSA "requires employers to pay overtime compensation to covered employees who work more than 40 hours in a given week. The rate of overtime pay must be 'not less than one and one-half times the regular rate' of the employee's pay." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, ___, 136 S.Ct. 2117, 2121, 195 L.Ed.2d 382 (2016) (citing 29 U.S.C. § 207(a)); *see also Hobbs v. Petroplex Pipe & Constr., Inc.*, 946 F.3d 824, 829 (5th Cir. 2020) ("The FLSA requires employers to pay employees at least one-and-one-half times the regular hourly rate for hours worked in excess of forty hours per week." (citing 29 U.S.C. § 207(a)(1)).

"The FLSA allows employees to sue on behalf of 'themselves and other employees similarly situated,'" *Epic Sys. Corp. v. Lewis*, ____ U.S. ____, ____, 138 S.Ct. 1612, 1626, 200 L.Ed.2d 889 (2018) (citing 29 U.S.C. § 216(b)), "but the other employees do not become plaintiffs in the action unless and until they consent in writing." *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008) (citing 29 U.S.C. § 216(b)). Collective actions, while not required by the FLSA, allow "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170, 110 S.Ct. 482, 486, 107 L.Ed.2d 480 (1989). Collective actions also benefit the judicial system by encouraging the "efficient resolution in one proceeding

10

of common issues of law and fact arising from the same alleged discriminatory activity." *Id.* They are similar to, but not exactly the same as, class actions brought under Rule 23 of the Federal Rules of Civil Procedure. *Compare Belt v. Emcare, Inc.,* 299 F. Supp. 2d 664, 665 (E.D. Tex. 2003) ("A collective action, like a class action, prevents piecemeal litigation, inconsistent adjudications, and difficult res judicata issues." (citing *Donovan v. Univ. of Tex. at El Paso*, 643 F.2d 1201, 1206–07 (5th Cir. 1981)) *with Sedtal v. Genuine Parts Co.*, No. 1:08-CV-413-TH, 2009 WL 2216593, at *1 (E.D. Tex. July 23, 2009) ("But, it is different from a class action in that absent class members do not share in the recovery (and are not bound by the judgment) unless they specifically opt into the class upon receiving notice of the action.").

    b.   <u>Standard for Certifying an FLSA Collective in the Fifth Circuit</u>

  As mentioned above, while Rosales's Motion for Certification was pending, the Fifth Circuit, for the first time, adopted a standard for determining whether to certify a collective in an FLSA lawsuit. *See Swales*, 985 F.3d at 433. In doing so, the Fifth Circuit also rejected a standard district courts in this Circuit previously applied to determine whether to certify a collective. *See id.* at 434. The Court now compares the standard the Fifth Circuit rejected with the standard it recently adopted.

<u>*Lusardi* and Its Progeny</u>

  Before *Swales*, the standard for determining whether to certify an FLSA collective most commonly applied by district courts derived from *Lusardi v. Xerox Corp.*, 118 F.R.D.

351 (D.N.J. 1987).[10]  *See Swales*, 985 F.3d at 436.  "*Lusardi* laid out a two-step process to determine, on an *ad hoc* case-by-case basis, whether prospective opt-in plaintiffs in a proposed collective are 'similarly situated' enough to satisfy the FLSA."  *Id.* at 436 (citation omitted).

"Step one involves an initial 'notice stage' determination that proposed members of a collective are similar enough to receive notice of the pending action."  *Id.* (citation omitted).  "This initial step is referred to as 'conditional certification' of a putative class."  *Id.*  "District courts typically base their decisions at the first step on the pleadings and affidavits of the parties."  *Id.* (quotation omitted).  "And they may require little more than substantial allegations that the putative [collective] members were together the victims of a single decision, policy, or plan."  *Id.* at 436–37 (quotations omitted).  Notably, in applying *Lusardi*, several courts in the Southern District of Texas concluded that it is inappropriate to consider merit-based defenses, including exemptions raised by defendants, when weighing whether to "conditionally certify" a collective at the notice stage.  *See, e.g.*, *Field v. Anadarko Petroleum Corp.*, No. 4:20-CV-00575, 2020 WL 6075633, at *2 (S.D. Tex. Oct. 15, 2020); *Kelley v. Alpine Site Servs., Inc.*, No. 4:19-CV-01152, 2020 WL

---

[10]    There is a second approach district courts have used to determine whether to certify a collective in an FLSA case, but few courts apply it.  *See Swales*, 985 F.3d at 437.  This approach comes from *Shushan v. Univ. of Colorado at Boulder*, 132 F.R.D. 263 (D. Colo. 1990).  *See id.*  "In *Shushan*, the court held that for conditional certification, plaintiffs must satisfy all of the requirements of [R]ule 23, insofar as those requirements are consistent with . . . § 216(b)."  *Id.* (quotation omitted).  Moreover, "[t]he court acknowledged the difference between § 216(b)'s opt-in feature and Rule 23's opt-out feature, but it concluded that Congress intended [Section 216's] 'similarly situated' inquiry to be coextensive with Rule 23 class certification," meaning that "courts applying this test consider 'numerosity,' 'commonality,' 'typicality,' and 'adequacy of representation' to determine whether to certify a collective action."  *Id.* (quotations omitted).

1659926, at *4 (S.D. Tex. Mar. 31, 2020); *Diaz v. Applied Mach. Corp.*, No. 4:15-CV-1282, 2016 WL 3568087, at *9 (S.D. Tex. June 24, 2016). *But see Aguirre v. SBC Commc'ns, Inc.*, No. 4:05-CV-3198, 2006 WL 964554, at *7 (S.D. Tex. Apr. 11, 2006) ("A number of courts have refused to certify a class, even conditionally, when determining whether the employer improperly treated the plaintiffs as nonexempt would require a highly individualized, fact-intensive inquiry.") (collecting cases).[11]

"Step two occurs at the conclusion of discovery (often prompted by a motion to decertify)." *Swales*, 985 F.3d at 437 (quotation omitted). "Because it has the benefit of full discovery, the court makes a second and final determination, utilizing a stricter standard, about whether the named plaintiffs and opt-ins are "similarly situated" and may therefore proceed to trial as a collective." *Id.* (quotations omitted). "If the court finds that the opt-ins are not sufficiently similar to the named plaintiffs, it must dismiss the opt-in employees, leaving only the named plaintiff's original claims." *Id.* (quotations omitted). "Factors considered at this second step include: (1) [the] disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the] defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Id.* (quotations omitted).

Before *Swales*, the *Lusardi* approach was the standard most commonly used by district courts to determine whether to certify a collective in FLSA cases. *See id.* at 434.

---

[11]    And, in at least one case, a court in the Southern District of Texas determined it was inappropriate to consider the MCA exemption at the "notice stage." *See Albanil v. Coast 2 Coast, Inc.*, No. 4:08-CV-486, 2008 WL 4937565, at *7 (S.D. Tex. Nov. 17, 2008).

But, prior to *Swales*, the Fifth Circuit had neither adopted *Lusardi* nor set forth a standard of its own for making this determination. *See id.* at 433; *see also Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 518–19 (5th Cir. 2010) (per curiam) ("We have not ruled on how district courts should determine whether plaintiffs are sufficiently 'similarly situated' to advance their claims together in a single § 216(b) action"). So, in the absence of a circuit-wide standard, several courts in the Southern District of Texas relied on the *Lusardi* approach. *See, e.g., Hernandez v. Robert Dering Constr., LLC*, 191 F. Supp. 3d 675, 679–80 (S.D. Tex. 2016); *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 860–61 (S.D. Tex. 2012). And, unsurprisingly, the Parties initially relied on *Lusardi* in making arguments in support of and in opposition to certifying the Proposed Collective. But, while Rosales's Motion for Certification was pending before the Court, the Fifth Circuit rejected the *Lusardi* approach and adopted a standard of its own. *Swales*, 985 F.3d at 434.

<u>*Swales v. KLLM Transp. Servs., L.L.C.*</u>

As mentioned, prior to *Swales*, the Fifth Circuit "ha[d] neither adopted nor rejected a definitive legal standard" for determining whether an FLSA collective should be certified. *Id.* at 433. But in *Swales,* the Fifth Circuit "d[id] both" in hopes of "providing a workable, gatekeeping framework for assessing, at the outset of litigation, *before* notice is sent to potential opt-ins, whether putative plaintiffs are similarly situated — not abstractly but actually." *Id.* (emphasis in the original).

As an initial matter, the Fifth Circuit *expressly* rejected the *Lusardi* approach. *Id.* at 433–34, 439–41. And the Fifth Circuit was crystal clear as to why it was disavowing this approach, noting that it "frustrates, rather than facilitates, the notice process." *See id.* at

14

439.  Moreover, the Fifth Circuit rejected the *Lusardi* approach because it was inconsistently applied and is therefore unpredictable.  *See id.* at 439–41.  The Fifth Circuit also rejected the *Lusardi* approach because it "distracts from the FLSA's text."  *Id.* at 440.  Specifically, the "FLSA, and § 216(b) in particular, says nothing about 'conditional certification' or any of the requirements of Rule 23" of the Federal Rules of Civil Procedure, and so the Fifth Circuit refused to "read the statute as supporting any of the certification tests that district courts have created to determine whether a group of employees should receive notice about a collective action."  *Id.*

Casting *Lusardi* aside, the Fifth Circuit instructed district courts as to what they should assess when deciding whether to certify a collective in an FLSA case.  *See id.*  In making this decision, the district court must "ensur[e] that notice goes out to those who are 'similarly situated,' in a way that scrupulously avoids endorsing the merits of the case."  *Id.*  That's it.

Based on these legal principles, the Fifth Circuit set forth the approach for district courts to use in determining whether certification is appropriate.  *See id.* at 441–44.  The Fifth Circuit did away with the *Lusardi* two-step certification process.  *Id.* at 441.  Instead, the Fifth Circuit insists that "a district court . . . identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of employees is similarly situated."  *Id.* (quotations omitted).  Then, a district court "should authorize preliminary discovery accordingly."  *Id.*  "The amount of discovery necessary to make that determination will vary case by case, but the initial determination must be made, and as early as possible."  *Id.*  Most importantly, the Fifth Circuit emphasized that

15

"*the district court, not the standards from Lusardi*, should dictate the amount of discovery needed to determine if and when to send notice to potential opt-in plaintiffs." *Id.* (emphasis added).

After ordering the amount of discovery that it deems necessary, the district court must then determine whether the "merits questions" it identified at the outset can be answered on a collective basis. *See id.* at 442–43. That is, the district court must decide whether the employees are "similarly situated," therefore making collective adjudication of their claims against the defendant appropriate. *See id.* "If answering [these merits] question[s] requires a highly individualized inquiry into each potential opt-in's circumstances, the collective action would quickly devolve into a cacophony of individual actions," rendering certification of the proposed collective inappropriate. *Id.* at 442.

In addition to setting forth a new approach to determine whether to certify a collective in an FLSA case, the Fifth Circuit also emphasized other important legal principles concerning the district court's litigation-management discretion. *See id.* at 443. The Fifth Circuit emphasized that "the district court has broad, litigation-management discretion" in determining whether to certify a collective. *Id.* That discretion, however "is cabined by the FLSA's 'similarly situated' requirement and the Supreme Court's" strict prohibition on "district courts . . . appearing to endorse the merits of the litigation by means of facilitating notice." *Id.* at 440, 443 (referencing *Hoffmann-La Roche Inc.*, 493 U.S. at 174, 110 S.Ct. at 488). But, again, the Fifth Circuit emphasized that a district court "is not captive to *Lusardi* or any 'certification' test." *Id.* at 443.

16

Lastly, the Fifth Circuit also made clear that it is the *plaintiff's* burden to establish that employees in a proposed collective are similarly situated.  *See id.*; *see also Hebert v. TechnipFMC USA, Inc.*, No. 4:20-CV-2059, 2021 WL 1137256, at *2 (S.D. Tex. Feb. 5, 2021) ("The plaintiff has the burden to establish that evidence exists, and courts are not required to sift through discovery to find a similarity.").  In determining whether the plaintiff has met this burden, the Court may "consider evidence submitted by the defendant." *Hebert*, 2021 WL 1137256, at *2 (citing *Swales*, 985 F.3d at 443).  If the plaintiff fails to meet this burden, then a district court "may decide the case cannot proceed on a collective basis," order additional discovery, or "find that only certain subcategories of [employees] . . . should receive notice." *Swales*, 985 F.3d at 443.

### 2.   Analysis

Having outlined the Fifth Circuit's new standard for determining whether to certify a collective in FLSA cases, the Court now assesses whether Rosales's Proposed Collective should be certified.  Based on the evidence offered by the Parties, the Court finds that Rosales failed to meet his burden of demonstrating that the members of the Proposed Collective are similarly situated.  Therefore, for the following reasons, the Court concludes that certifying the Proposed Collective is inappropriate.[12]

---

[12]   Before the Fifth Circuit issued its decision in *Swales*, Rosales argued that ISS and Gochis are collaterally estopped from opposing certification of the Proposed Collective in this case.  (Dkt. No. 46 at 2–4).  According to Rosales, that is because a court previously conditionally certified a collective in a different case involving "the same claim (failure to pay overtime), the same defense (the [MCA] exemption), many of the same positions (laborers, machine operators, equipment operators and welders), the same service . . ., work in most of the same geographic regions . . ., the same lawyers, and closely related companies."  (*Id.* at 2–3) (citing *Kelley*, 2020 WL 1659926).

(continue)

a.    The Merits Questions

As discussed in *Swales*, the Court must first "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of employees is similarly situated." *Id.* at 441 (quotations omitted).  In identifying these issues, the Court is mindful of what an *individual* plaintiff is required to prove in order to succeed on a claim alleging a violation of the FLSA's overtime-pay provisions. *Id.* at 442. In sum, that individual plaintiff must prove (1) he is an employee who is covered by the FLSA's overtime-pay provisions and therefore not exempt from such protections and (2) that his employer engaged in a pay practice that contravened the FLSA's overtime-pay provisions—that is, the employer paid the employee a regular hour's wage for overtime hours worked. *See Encino Motorcars, LLC*, 579 U.S. at ___, 136 S.Ct. at 2121 (citing 29 U.S.C. § 207(a)).  The Court is also mindful of what an individual plaintiff must show

---

ISS and Gochis disagree that collateral estoppel applies here.  (Dkt. No. 50 at 1–3).  The Court agrees with ISS and Gochis.

"Collateral estoppel applies when, in the initial litigation, (1) the issue at stake in the pending litigation is the same, (2) the issue was actually litigated, and (3) the determination of the issue in the initial litigation was a necessary part of the judgment." *Harvey Specialty & Supply, Inc. v. Anson Flowline Equip. Inc.*, 434 F.3d 320, 323 (5th Cir. 2005) (citing *Next Level Commc'ns LP v. DSC Commc'ns Corp.*, 179 F.3d 244, 250 (5th Cir. 1999).  Notably, collateral estoppel applies "when an issue of ultimate fact has . . . been determined by a valid and *final judgment* . . . ." *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970) (emphasis added); *see also Vines v. Univ. of La. at Monroe*, 398 F.3d 700, 705 (5th Cir. 2005) ("The doctrine of collateral estoppel applies to prevent issues of ultimate fact from being relitigated between the same parties in a future lawsuit if those issues have once been determined by a valid and final judgment.").  Conditional certification of a proposed collective is not a final judgment.  *See Swales*, 985 F.3d at 436 ("FLSA collective actions rarely (if ever) reach the courts of appeals at the notice stage because 'conditional certification' is not a final judgment.").  Therefore, ISS and Gochis are not collaterally estopped from contesting certification in this case.

It is also worth noting that the court in *Kelly* relied on the *Lusardi* approach in conditionally certifying the proposed collective.  *See Kelley*, 2020 WL 1659926, at *2.  That standard, however, has since been rejected by the Fifth Circuit.  *Swales*, 985 F.3d at 434.

18

to convert an individual FLSA action into a collective one: "*only those* 'similarly situated' may proceed as a collective[.]" *Swales*, 985 F.3d at 434.  And it is the plaintiff's burden to show that members of a proposed collective are similarly situated.  *Id.* at 443.  Thus, to convert an individual action alleging FLSA overtime-pay violations into a collective action, the plaintiff bears the burden of showing: (1) that the members of the proposed collective are similarly covered by the FLSA's overtime-pay protections and not exempt from such protections; and (2) that ISS engaged in a similar practice of denying overtime pay to nonexempt employees.

As explained more below, only the first prong warrants discussion.  An employee may be exempt from the FLSA's overtime-pay protections based on the job duties he or she performs.  *See Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 707, 67 S.Ct. 954, 960, 91 L.Ed. 1184 (1947) ("The District Court, in applying . . . the Motor Carrier Act to respondents, will determine whether or not the activities of each respondent, either as a whole or in substantial part, come within the Commission's definition of the work of a 'Loader.'"); *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 283 (5th Cir. 2014) (To determine "whether the employees engage in activities of a character directly affecting the safety of operation of motor vehicles . . . in interstate . . . commerce . . . what is controlling is the character of the activities involved in the performance of [the employee's] job.") (citations and quotations omitted)); *see also Allen*, 755 F.3d at 289 ("An employee loses the FLSA's protection over overtime pay under the MCA exemption only if the employee, based on the circumstances of his job, is reasonably likely to carry out activities affecting the safety of interstate transportation operations.") (Dennis, J.,

dissenting) (emphasis omitted).  Therefore, in showing that a proposed collective is similarly covered by the FLSA's overtime-pay protections, it is critical for a plaintiff to demonstrate that members of the proposed collective perform similar job duties entitling them to such protection.

Considering these legal principles, the questions Rosales must address to meet his burden are obvious.  First, Rosales must show that he and other members of the Proposed Collective performed similar job duties qualifying them for protection under the FLSA's overtime-pay protections.  Put differently, Rosales must show that, based on their job duties, he and members of the Proposed Collective are similarly not exempt from FLSA-protection.  In showing he and members of the Proposed Collective are similarly situated, Rosales must also address two arguments raised by ISS and Gochis.  First, Rosales must address their argument that he and members of the Proposed Collective perform job duties exempting them from FLSA protection under the MCA exemption.  (Dkt. No. 43 at 12–14).  And second, assuming that the MCA exemption applies, he must address their argument that the small-vehicle exception to the MCA exemption does not apply.  (*Id.* at 14–15).  Rosales must also address an assertion made by ISS and Gochis that is related to their second argument—namely, that determining whether the small-vehicle exception applies requires the Court to engage in a highly individualized factual inquiry, rendering certification of the Proposed Collective inappropriate.  (*Id.*).

b.    Discovery

Next, the Court must determine—and authorize—the amount of discovery necessary to decide whether the members of the Proposed Collective are similarly

situated.  *See Swales*, 985 F.3d at 441.  Determining the amount of discovery necessary to decide whether certification is appropriate is within the discretion of the district court. *Id.*  That said, this determination should be guided by the amount of discovery needed to address each of the merits questions a court has identified.  *See id.* at 441–42.

Here, the Parties have already proffered evidence addressing the merits questions identified above.  Moreover, discovery in this case was well under way before the Fifth Circuit issued the *Swales* decision.  *See supra* Section I.C.  On June 17, 2021, two days after the deadline to complete discovery passed, Rosales moved to extend the discovery deadline.  *See* (Dkt. No. 59).  But, as discussed below, it is unclear from the briefing how additional discovery will help Rosales demonstrate he and members of the Proposed Collective are similarly situated.  Thus, the Court sees no need to order additional discovery pertaining to collective certification at this time and now turns to address whether Rosales and members of the Proposed Collective are similarly situated, considering the merits questions identified above and the evidence the Parties have proffered.

c.     Rosales Fails to Satisfy His Burden of Proof

Based on evidence before the Court, the Court finds that Rosales failed to satisfy his burden of demonstrating that he and members of the Proposed Collective are similarly covered by the FLSA's overtime-pay protections based on their job duties.  In fact, as described below, Rosales provided *no evidence* tending to support this conclusion. And, even if he had provided some evidence, determining whether Rosales and members of the Proposed Collective are similarly situated would "require[] a highly individualized

21

inquiry into each potential opt-in's circumstances," resulting in the "collective action . . . quickly devolv[ing] into a cacophony of individual actions." *See Swales*, 985 F.3d at 442. Therefore, the Court concludes that certification of Rosales's Proposed Collective is inappropriate.[13]

Job Duties and the MCA Exemption

Rosales bears the burden of showing that he and the members of the Proposed Collective are "*similarly situated*." In doing so, he bears the burden of showing that he and members of the Proposed Collective are *similarly* covered by the FLSA's overtime-pay protections. And to do that, he must show that he and members of the Proposed Collective have job duties that are *similar* insofar as such duties do not exempt them from the FLSA's protection. *Cf. Pyramid Motor Freight Corp.*, 330 U.S. at 707, 67 S.Ct. at 960; *Allen*, 755 F.3d at 283. The Court finds he has failed to satisfy this burden.

In their Declarations, Rosales and Butler describe *their* job duties, (Dkt. No. 42-1 at ¶¶ 6–7); (Dkt. No. 42-2 at ¶¶ 6–7), but they say nothing of the job duties of the *others* in the Proposed Collective. Instead, Rosales and Butler merely state that these other ISS employees are paid the same way as them. Specifically, they state, "[b]ased on what [we] have seen and [our] conversations with [our] coworkers, [ISS's] pay practice applied to

---

[13]   Assuming for the sake of argument that Rosales sufficiently demonstrated that he and members of the Proposed Collective are similarly nonexempt from the FLSA's overtime-pay protections, he would still need to demonstrate that he and members of the Proposed Collective similarly suffered from a pay practice that denied them overtime pay to which they were entitled. But, because Rosales failed to meet his burden of demonstrating that he and members of the Proposed Collective are similarly covered by the FLSA's overtime-pay protections, the Court does not reach this other issue.

all employees employed by ISS" and that the manner they were paid did "not depend on what we did or our position with ISS."[14] (Dkt. No. 42-1 at ¶ 13); (Dkt. No. 42-2 at ¶ 13). A district court in this District, applying the *Swales* standard, recently held that a similar statement was insufficient to show that members of a proposed collective were "similarly situated" because the plaintiff "fail[ed] to meet his burden [of] show[ing] common job duties or job description."[15] *See Hebert*, 2021 WL 1137256, at *3, *5.

Moreover, ISS and Gochis offer unrebutted evidence tending to show that *all* members of the Proposed Collective are *exempt* from the FLSA's overtime pay protections. As noted, ISS and Gochis assert Rosales and the Proposed Collective are exempt from the FLSA's overtime-pay protections under the MCA exemption. (Dkt. No. 43 at 13–14).

"The MCA exemption to [the] FLSA overtime requirements appears at 29 U.S.C. § 213(b)(1) . . . ." *Masterson v. Tucker Energy Servs., Inc.*, No. SA-16-CA-749-OLG(HJB), 2018 WL 5733188, at *2 (W.D. Tex. Aug. 28, 2018), *report and recommendation adopted*, No. CV SA-16-CA-749-OLG, 2018 WL 5733157 (W.D. Tex. Sept. 25, 2018). Section 213(b)(1) provides that:

---

[14] Concerning the manner ISS paid its employees, Rosales also stated that ISS "has not paid laborers, machine/equipment operators, and welders, including myself, for all hours worked or overtime for hours worked over forty in a workweek. Instead, we were paid at our normal hourly rate for all hours worked. In other words, employees like myself were paid straight time for overtime." (Dkt. No. 42-1 at ¶ 12). Butler made a similar statement in his Declaration. (Dkt. No. 42-2 at ¶ 12).

[15] In *Hebert*, the plaintiff stated in his declaration, "[b]ased on what I saw and my conversations with my coworkers, I believe that this pay practice applied to all installation engineers employed by FMC Technologies, Inc." 2021 WL 1137256, at *3. Importantly, "[t]he declaration [did] not indicate if the engineers all have the same job duties." *Id.*

> The provisions of section 207 of this title shall not apply with
> respect to . . . any employee with respect to whom the
> Secretary of Transportation has power to establish
> qualifications and maximum hours of service pursuant to the
> provisions of section 31502 of Title 49 . . . .

29 U.S.C. § 213(b)(1).  Moreover, the Fifth Circuit has stated that "[t]he MCA exemption

applies to employees whose maximum hours are set by the Secretary of Transportation,

being employees who are (1) employed by a motor carrier"[16] and "(2) 'engage in activities

of a character directly affecting the safety of operation of motor vehicles in the

transportation on the public highways of passengers or property in interstate or foreign

commerce.'"  *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 577 n.4 (5th Cir. 2018)

(citing 49 U.S.C. § 31502(b); 29 C.F.R. § 782.2(a)).  The Fifth Circuit has elaborated on what

is required to satisfy the second prong:

> The Supreme Court has clarified that the exemption applies
> "to those employees and those only whose work involves
> engagement in activities consisting wholly or in part of a class
> of work which is defined: (i) As that of a driver, driver's
> helper, loader, or mechanic, and (ii) as directly affecting the
> safety of operation of motor vehicles on the public highways
> in transportation in interstate or foreign commerce."

*Id.* (quoting 29 C.F.R. § 782.2(b)(2)) (citing *Morris v. McComb*, 332 U.S. 422, 68 S.Ct. 131, 92

L.Ed. 44 (1947), *Pyramid Motor Freight Corp.*, 330 U.S. 695, 67 S.Ct. 954, and *Levinson v.

Spector Motor Serv.*, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158 (1947)).

Here, ISS and Gochis offer evidence tending to show that Rosales and members of

the Proposed Collective fall under the MCA exemption.  ISS Yard Manager Brandon

---

[16]   "The term 'motor carrier' means a person providing motor vehicle transportation for
compensation."  49 U.S.C. § 13102(14).

Hawkins states that "ISS is subject to the Department of Transportation's rules for transporting goods." (Dkt. No. 43-1 at 5, ¶ 17). Hawkins also states that ISS "send[s] trucks across state lines . . . in furtherance of [its] commercial enterprise of manufacturing screwpiles," (*id.*), and that such "trucks and trailers that leave the ISS yards travel out of state on a regular basis," (*id.* at ¶ 16). In addition, Hawkins states that ISS employees regularly engage in duties involving the safety of these vehicles, noting that an "*important* duty of laborers, operators, and welders, is to check trailers for safety items." (*Id.* at ¶ 14) (emphasis added). Specifically, he states that ISS employees "inspect trailers' safety lights, including blinkers and running lights, to [e]nsure they are operational" and "also inspect tires, check tire pressure, check tread depth, inspect airbags, and visually inspect the trailers for any other damage that could affect the trailer as it operates on the public roads." (*Id.*). According to Hawkins, such inspections occur regularly and "take roughly 15 minutes per trailer." *See* (*Id.* at ¶ 15). Indeed, "[e]ach trailer must be inspected before it leaves the yard" and "[e]ach trailer is also inspected on a weekly basis whether or not it leaves the yard." (*Id.*).

Hawkins's statements are buttressed by a trailer inspection form signed by Butler along with Rosales and Butler's employee work reports, which show that ISS employees engage in job duties affecting the safety of the trucks that leave ISS's yards. (Dkt. No. 43-1 at 7–15). Furthermore, ISS and Gochis offer documents from Rosales and Butler's personnel files showing that *Rosales and Butler even acknowledge* that their job duties subject them to the MCA exemption. (Dkt. No. 43-2).

In response, Rosales fails to offer *any* evidence rebutting that he and the Proposed Collective are subject to the MCA exemption. *See* (Dkt. No. 42); (Dkt. No. 46). Specifically, Rosales fails to offer evidence showing either that ISS is not a motor carrier or that he and members of the Proposed Collective *do not* engage in job duties directly affecting the safety of trucks leaving ISS's yards. Instead, Rosales sets forth three arguments in response to ISS and Gochis's unrebutted evidence concerning the MCA exemption.

First, he argues that he is not obligated to rebut ISS and Gochis's evidence because "[t]he [MCA] exemption is an affirmative defense that must be pleaded and proved by a defendant." (Dkt. No. 46 at 5) (emphasis omitted). While it may be true that the MCA exemption is an affirmative defense, Rosales's counterargument misses the mark because ISS and Gochis are not required to prove an affirmative defense at this stage in the litigation. Rather, at this stage, *Rosales* bears the burden of showing that he and members of the Proposed Collective are similarly situated and that the Court can answer this merits question on a collective basis. *See Swales*, 985 F.3d at 443.

Rosales also implies that the Court *must* certify the Proposed Collective to adjudicate the MCA exemption affirmative defense. (Dkt. No. 53 at 4–5). That is because, according to Rosales, the "Fifth Circuit . . . and . . . the Supreme Court . . . require . . . analyzing the [MCA] exemption based on 'common proof.'" (*Id.*) (citing *Morris*, 332 U.S. at 432–34, 68 S.Ct. at 136–37; *Olibas v. Barclay*, 838 F.3d 442, 447 (5th Cir. 2016); *Allen*, 755 F.3d at 284–85; *Barefoot v. Mid-Am. Dairymen, Inc.*, No. 93-1684, 1994 WL 57686, at *3 (5th Cir. 1994) (per curiam)). That argument is unpersuasive for two reasons. First, none of

the cases that Rosales cites involve challenges to a trial court's decision to certify a collective. Thus, in these cases, neither the Supreme Court nor the Fifth Circuit addressed whether the trial court was required to certify the collective because the defendant had raised the MCA exemption. Second, the fact that a defendant is required to offer common proof to prove its affirmative defense—the MCA exemption—*at trial* does not absolve Rosales of *his* burden, *at the certification stage*, to show that he and members of the Proposed Collective are similarly covered by the FLSA's overtime-pay protections based on the job duties they perform.

Finally, Rosales argues that, in offering evidence tending to show that all members of the Proposed Collective are subject to the MCA exemption, ISS and Gochis have essentially shown that he and members of the Proposed Collective are similarly situated. (Dkt. No. 46 at 6). This argument also falls short. As stated, *Rosales* bears the burden of showing he and members of the Proposed Collective *are* similarly covered by the FLSA's overtime-pay protections. But evidence that the MCA exemption applies to Rosales and all members of Proposed Collective is merely proof that he and members of the Proposed Collective are *not covered*.

Moreover, to accept Rosales's argument as true would produce an absurd result. Indeed, a plaintiff could produce no evidence that he and members of a proposed collective are similarly situated but a court could nevertheless be forced to conclude that the proposed collective is similarly situated if the defendant produced evidence in support of an affirmative defense. This would place defendants in FLSA cases between a rock and a hard place: produce evidence that you are not liable under the FLSA but risk

giving a plaintiff what he needs to satisfy his burden that he and members of his proposed collective are similarly situated, or opt against raising your defense to liability to avoid the risk of providing the plaintiff with the proof he needs to meet his burden at the certification stage.

Rosales nevertheless points to *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 628 (E.D. Cal. 2009), which, according to him, supports his assertion that ISS and Gochis's evidence that Rosales and members of the Proposed Collective are similarly subject to the MCA exemption is sufficient for this Court to find that he and members of the Proposed Collective are similarly situated.  (Dkt. No. 46 at 6).  However, in relying on *Kress* to support his assertion, Rosales omits key details from that case.  For instance, Rosales selectively notes that the district court in *Kress* stated that, "[t]aken literally . . . plaintiffs [might] receive conditional certification solely on the basis on an employer's uniform classification decision."  (Dkt. No. 46 at 6) (citing *Kress*, 263 F.R.D. at 629).  But Rosales leaves out the next sentence, in which the court clarifies that "cases engaging in notice stage analysis on misclassification claims, however, *have required plaintiffs* to provide some further allegation or evidence indicating that prospective class members share similar job duties."  *Kress*, 263 F.R.D. at 629–30 (emphasis added).

More importantly, Rosales disregards that, in granting the plaintiff's motion for certification in *Kress*, the district court relied on *the plaintiff's* evidence showing that the exemptions to the FLSA that the defendant raised *did not* apply and that he and members of his proposed collective were similarly situated.  263 F.R.D. at 630–31.  In contrast, Rosales has not offered any evidence showing he and members of the Proposed

Collective are similarly covered by the FLSA's overtime-pay protections based their job duties.  Nor has he rebutted ISS and Gochis's argument and evidence that the MCA exemption similarly exempts Rosales and members of the Proposed Collective from protection under the FLSA.  Thus, the *Kress* decision is inapplicable to this case.[17]

### The Small-Vehicle Exception

The applicability of the MCA exemption, however, is not the end of this Court's inquiry in determining whether Rosales has met his burden of showing that he and members of the Proposed Collective are similarly situated.  Indeed, even if the MCA exemption applies, Rosales could still show that he and members of the Proposed Collective are similarly covered by the FLSA's overtime-pay protections by offering evidence demonstrating that he and members of the Proposed Collective similarly qualify for the small-vehicle exception to the MCA exemption.  But, for the following reasons, the Court finds that Rosales has failed to offer *any* evidence showing that he and members of the Proposed Collective qualify for the small-vehicle exception.  And even if he offered *some* evidence showing they qualify for this exception, certification of the Proposed Collective is nevertheless inappropriate because determining whether the small-vehicle exception applies requires a highly individualized inquiry.

---

[17]    Moreover, in deciding to certify the proposed collective in *Kress*, the district court relied on the *Lusardi* approach.  263 F.R.D. at 627–28.  As stated above, the Fifth Circuit has rejected this approach.

The "small vehicle exception" designates "a class of employees to which the MCA exemption does not apply." *Carley*, 890 F.3d at 579. That class of employees consists of those:

> (1) who [are] employed by a motor carrier or motor private carrier . . . ;
>
> (2) whose work, in whole or in part, is defined—
>
>> (A) as that of a driver, driver's helper, loader, or mechanic; and
>>
>> (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce, . . . ; and
>
> (3) who perform[] duties on motor vehicles weighing 10,000 pounds or less.

*Id.* (alterations in original). Describing when the small-vehicle exception is inapplicable, a district court in the Fifth Circuit said:

> Under this exception, the MCA exemption *does not apply* "to employees (1) who are employed by a motor carrier or motor private carrier, (2) whose work, in whole or in part, is defined as that of a driver, driver's helper, loader, or mechanic and affects the safety of motor vehicles weighing 10,000 pounds or less in transportation on public highways, and (3) who perform duties on motor vehicles weighing 10,000 pounds or less.

*Masterson*, 2018 WL 5733188, at *2 (citing *Moore v. Performance Pressure Pumping Servs., LLC*, No. 5:15-CV-346-RCL, 2017 WL 1501436, at *8 (W.D. Tex. Apr. 26, 2017)) (emphasis added). As these cases demonstrate, critical to determining whether the small-vehicle exception applies is whether an employee works on a vehicle weighing 10,000 pounds or less. *See Carley*, 890 F.3d at 579; *see also Masterson*, 2018 WL 5733188, at *2. And, in determining whether a vehicle weighs 10,000 pounds or less, the Fifth Circuit has said

that gross vehicle weight rating ("GVWR") is the proper measure of weight.[18]  *See Carley*, 890 F.3d at 582 ("We agree with the Eighth Circuit . . . that GVWR is the proper measure of weight.").

ISS and Gochis offer unrebutted evidence that Rosales and members of the Proposed Collective work *solely* on trucks weighing *more than* 10,000 pounds.  ISS's Yard Manager Brandon Hawkins states that "[t]he vehicles [ISS] use[s] to transport the materials and equipment as described above *all* have a [GVWR] of *over 10,000 pounds*." (Dkt. No. 43-1 at 5, ¶ 16) (emphases added).  Specifically, "[t]he unloaded trailers weigh approximately 11,000 pounds, and the trailers loaded with screwpiles . . . generally [weigh] in excess of 50,000 pounds."  (*Id.*).  Additionally, Rosales and Butler signed documents acknowledging that drivers, welders, laborers, and operators working for ISS are required to work with trucks weighing *more than* 10,000 pounds GVWR.  (Dkt. No. 43-2 at 5–6, 8–9).

As with the MCA exemption, Rosales does not offer any evidence rebutting ISS and Gochis's evidence showing that Rosales and members of the Proposed Collective do not qualify for the small-vehicle exception.  *See* (Dkt. No. 42); (Dkt. No. 46).  That is, Rosales fails to offer *any* evidence that he and members of the Proposed Collective work on trucks or trailers weighing 10,000 pounds GVWR or less.  *See* (*Id.*).  As such, Rosales has failed to satisfy *his* burden of showing he and members of the Proposed Collective

---

[18]   GVWR "is defined in [Department of Transportation] regulations as 'the value specified by the manufacturer as the loaded weight of a single motor vehicle.'"  *Albanil v. Coast 2 Coast, Inc.*, 444 F. App'x 788, 796 (5th Cir. 2011) (quoting 49 C.F.R. § 390.5); *see also Garza v. City of La Porte*, 160 F. Supp. 3d 986, 998 (S.D. Tex. 2016).

similarly qualify for the small-vehicle exception to the MCA exemption and are therefore similarly covered by the FLSA's overtime-pay protections.

However, even if Rosales offered *some* evidence showing he and members of the Proposed Collective similarly qualify for the small-vehicle exception, certification of the Proposed Collective would nevertheless be inappropriate because determining whether this exception applies to each member of the Proposed Collective requires a highly individualized inquiry.   As stated previously, the Fifth Circuit counsels against certification of a proposed collective "[i]f answering [the merits] question[s] [identified by the district court at the outset of the litigation] requires a highly individualized inquiry into each potential opt-in's circumstances."   *Swales*, 985 F.3d at 442.   But determining whether the small-vehicle exception applies to each employee in a proposed collective requires just that—a highly individualized inquiry.   Other district courts have arrived at the same conclusion.   *Noll v. Flowers Foods Inc.*, 478 F. Supp. 3d 59, 66–67 (D. Me. 2020) ("Although this case involves several questions common to the class that can be resolved on representative evidence, Plaintiff . . . has failed to demonstrate that the [small-vehicle] exception to the MCA defense—the issue for which Plaintiff bears the burden—is anything other than thoroughly individualized."); *Cooper v. Noble Casing, Inc.*, No. 15-CV-1907-WJM-CBS, 2016 WL 6525740, at *4–5 (D. Colo. Nov. 3, 2016) (agreeing with the defendant that "individualized discovery will still be needed because the small vehicle exception must be established on an employee-by-employee, week-by-week basis" and therefore finding "that individual issues—most notably each employee's duties on a

week-by-week basis, as actually performed—will overwhelm whatever common questions otherwise exist").

Moreover, "[g]uidance from the United States Department of Labor . . . at least partially supports this" conclusion. *Cooper*, 2016 WL 6525740, at \*4. Indeed, "[i]n its Field Assistance Bulletin No. 2010–2, the Labor Department counsels that the small vehicle exception *must be judged* on a workweek-by-workweek basis, particularly where an employee works both on vehicles weighing 10,000 pounds or less and on vehicles weighing more than 10,000 pounds." *Id.* (citing https://www.dol.gov/whd/fieldbulletins/fab2010_2.htm) (emphasis added) (footnote omitted). "According to the Labor Department, the small vehicle exception applies in any week where the employee worked on a vehicle weighing 10,000 pounds or less, but does not apply in any week where the employee's duties solely involve vehicles weighing more than 10,000 pounds." *Id.*

The Labor Department's Field Assistance Bulletin raised in *Cooper* is instructive here. For Rosales to satisfy his burden of showing that he and members of the Proposed Collective similarly qualify for the small-vehicle exception, he would need to offer evidence that *each* member of the Proposed Collective worked on a vehicle weighing 10,000 pounds or less at least some of the time on a *workweek-by-workweek basis*. *See id.* That is a highly individualized inquiry—plain and simple. Moreover, ISS and Gochis offer evidence showing that the job duties ISS employees perform vary employee-to-employee and week-to-week, (Dkt. No. 43-1 at 9–15), making it even more likely that

determining whether Rosales and members of the Proposed Collective similarly qualify for the small-vehicle exception will require a highly individualized inquiry.

Rosales nevertheless disputes ISS and Gochis's argument that "whether or not the motor carrier exemption (or an exception to it) applies is 'a question that cannot be answered on a representative basis,'" (quoting Dkt. No. 43 at 14), by directing this Court to the Fifth Circuit's decision in *Olibas*, a case that involved a collective action brought by truck drivers alleging that the defendant "violated the FLSA by failing to pay them overtime," 838 F.3d at 445.  (Dkt. No. 46 at 6–7).  The defendant in *Olibas* raised the MCA exemption as an affirmative defense.  838 F.3d at 445–47.  Ultimately, the jury returned a verdict for the truck drivers.  *Id.* at 447.

The *Olibas* case, however, does not apply here.  First, that case did not involve whether the trial court had properly certified the collective at issue.  *See id.* at 447–51.  Thus, the Fifth Circuit never addressed whether or not a collective could be certified in a case involving the MCA exemption and small-vehicle exception.  Second, the small-vehicle exception was not at issue.  In fact, the Fifth Circuit stated that, "[a]t trial, there was *no dispute* that Native was a motor carrier engaged in interstate commerce or that the drivers operated trucks over 10,000 pounds."  *Id.* at 445 (emphasis added).  Rather, *Olibas* merely involved "conflicting testimony over whether the drivers engaged in the actual transportation of goods across state lines or the intrastate transportation of goods in the flow of interstate commerce—situations that would bring the drivers within the ambit of the MCA exemption."  *Id.* at 446.  Thus, *Olibas* does not apply here.

Moreover, the issue in this case is not whether it is *ever possible* to adjudicate the MCA exemption and the small-vehicle exception on a collective basis; rather, it is whether Rosales has met his burden of demonstrating, through evidence, that adjudicating the claims of the Proposed Collective will not require a highly individualized inquiry.  He has not.

<u>The Court Will Not Certify the Proposed Collective</u>

For the reasons stated, the Court finds that Rosales has failed to meet his burden of showing that he and members of the Proposed Collective are similarly situated and that a highly individualized inquiry into each opt-in's circumstances would not be required to adjudicate the Proposed Collective's FLSA claims.  But, as the Fifth Circuit stated, this Court has "broad, litigation-management discretion" in determining what comes next.  *Swales*, 985 F.3d at 443.  Indeed, the Court "may decide the case cannot proceed on a collective basis," or "that it needs further discovery to make this determination.  Or it may find that only certain subcategories . . . should receive notice." *Id.*; *see also Hebert*, 2021 WL 1137256, at *2 (noting that, if the plaintiff fails to meet his burden of showing members of a proposed collective are similarly situated, then the district court has the "discretion" to "decide that (1) the case cannot proceed on a collective basis, (2) further discovery is needed to determine if notice is to be sent to the 'similarly situated' workers, or (3) only a certain subcategory of the putative class should receive notice." (citing *Swales*, 985 F.3d at 443)).  The Court addresses each of these three options, finding that a modified version of the first is most appropriate given the evidence before the Court and the procedural posture of this case.

Before explaining the nature of a modified version of the first option and why it is best, the Court briefly describes why the latter two options are less optimal. Beginning with the second option, it is not clear to the Court at this time how ordering additional discovery would resolve the deficiencies with the Proposed Collective raised in this Order. Rosales has had ample opportunity to address the arguments and evidence ISS and Gochis raised by supplementing the evidence he attached to his Motion for Certification. He did not. *See* (Dkt. No. 46); (Dkt. No. 53). Although Rosales moved to extend the deadline to complete discovery two days after that deadline passed, he did not explain how permitting additional time for discovery would help him meet his burden of demonstrating he and members of the Proposed Collective are similarly situated. *See* (Dkt. No. 59). Thus, the Court will not order additional discovery at this time because it is unclear how doing so will resolve these deficiencies.

The third option—that the Court certify a subset of the Proposed Collective—is similarly unsuitable. As stated above, Rosales has failed to offer evidence demonstrating that *any* members of the Proposed Collective are covered by the FLSA's overtime-pay protections. This option may be appropriate if Rosales is able to show that *some* members of the Proposed Collective are similarly situated in a new motion for certification. But, because he failed to show that at least some members are similarly situated in his Motion for Certification, certifying a subset of the Proposed Collective is unworkable.

That leaves the first option—declining to certify the Proposed Collective outright. Because Rosales has failed to show that *any* member of the Proposed Collective is similarly situated and failed to explain how additional discovery would cure this defect,

declining to certify the entire Proposed Collective is most sensible.  For these reasons, the Court declines to certify the Proposed Collective but will provide Rosales the opportunity to file a new motion for certification if, through new arguments or evidence, he can demonstrate that he and the members of the collective he proposes are similarly situated.

### B.    MOTION TO EXTEND DEADLINES

The Court now turns to Rosales's Motion to Extend Deadlines.  In sum, Rosales asks this Court to extend all remaining scheduling order deadlines, including the deadline to complete discovery.  (Dkt. No. 59).  The Court will deny the Motion at this time but will consider setting this matter for a status conference to gather the Parties' input for scheduling after reviewing the Parties' proposed schedule for proceeding.

## III.   CONCLUSION

For the foregoing reasons, the Court **DENIES WITHOUT PREJUDICE** the Motion for Certification.[19]  (Dkt. No. 42).  In addition, the Court **DENIES** the Motion to Extend Deadlines, (Dkt. No. 59), and directs the Parties to file, within fourteen days of this Order, a proposed schedule for proceeding.  The Court will either adopt the proposed schedule or set this issue for a status conference.

It is SO ORDERED.

---

[19]    In their Response, ISS and Gochis argue that, if the Court determines Rosales has met his burden for the Court to certify the Proposed Collective, the Court does not have personal jurisdiction over them for the claims of ISS employees who are not Texas residents and whose claims did not arise in Texas.  (Dkt. No. 43 at 12, 16–18).  For that reason, according to ISS and Gochis, the Court should exclude those employees from whatever collective it certifies.  (*Id.*).  The Court does not address this issue because Rosales has failed to show that *any* members of the Proposed Collective are sufficiently similar to warrant certification, and the Court has denied his Motion for Certification.

Signed on September 30, 2021.

DREW B. TIPTON
UNITED STATES DISTRICT JUDGE