United States District Court
Southern District of Texas
**ENTERED**
September 30, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

| | | |
|---|---|---|
| **ROSENDO JOSEPH ROSALES, III,** | § | |
| **Individually and On Behalf of** | § | |
| **All Others Similarly Situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 6:20-CV-00030** |
| | § | |
| **INDUSTRIAL SALES & SERVICES,** | § | |
| **LLC, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

### MEMORANDUM OPINION AND ORDER

Between 2017 and 2019, Plaintiffs Rosendo Rosales and Leo Cornelius Butler, Jr. worked as welders for Industrial Sales & Services, LLC ("ISS"). ISS was formed from its sister company, Alpine Site Services Inc. ("Alpine") in 2009. During their employment with ISS, the Plaintiffs were not paid overtime, so they sued ISS and Bernard Gochis, a corporate officer of both Alpine and ISS, for violating the Fair Labor Standards Act ("FLSA"). The Defendants argue that the Plaintiffs were not entitled to overtime because of the Motor Carrier Act ("MCA") exemption to the FLSA.

Pending before the Court are three motions for summary judgment. First is Rosales's Motion for Partial Summary Judgment on the FLSA MCA exemption—an affirmative defense invoked by the Defendants. (Dkt. No. 84). Gochis and ISS filed a cross motion requesting summary judgment on the MCA exemption. (Dkt. No. 85). And

the third is a motion for partial summary judgment by the Defendants on the willfulness and good faith issues under the FLSA.  (Dkt. No. 86).

For the following reasons, the Court **DENIES** the Plaintiffs' Motion for Partial Summary Judgment as to the Motor Carrier Exemption.  (Dkt. No. 84).  Further, the Court **GRANTS in part** and **DENIES in part** the Defendants' Renewed Motion for Summary Judgment on the Merits of Defendants' Motor Carrier Act Exemption Defense.  (Dkt. No. 85).  The Court **DISMISSES** the claims against Bernard Gochis.  (Dkt. No. 26).  Finally, the Court **DENIES** the Defendants' Renewed Motion for Partial Summary Judgment on the Issues of Willfulness and Good Faith.  (Dkt. No. 86).

## I.       BACKGROUND

ISS is a Colorado corporation, (Dkt. No. 26 at 3); (Dkt. No. 30 at 2), that "fabricates engineered screwpiles for commercial construction projects, including power stations, oil and gas refineries and natural gas power plants."  (Dkt. No. 26 at 3); (Dkt. No. 30 at 3). Gochis is a corporate officer and the sole member of ISS.  (Dkt. No. 90-4 at 11:24–12:10). He is also a corporate officer for Alpine, (*id*. at 11:11-19), which is the "sister company" of ISS, (Dkt. No. 90 at 10); (Dkt. No. 86 at 7).

Rosales was employed by ISS from late 2017 to mid-2019[1] first as a laborer and later as a welder.[2]  (Dkt. No. 26 at 3–4); (Dkt. No. 30 at 3).  During that time, Rosales regularly worked more than 40 hours a week but was only paid his regular hourly rate for all hours worked.  (Dkt. No. 26 at 5); (Dkt. No. 30 at 4).

On May 15, 2020, Rosales brought suit against the Defendants for failure to pay overtime in violation of 29 U.S.C. § 207(a).  (Dkt. No. 1 at 6–7).  The Parties dispute whether Rosales is exempt from the FLSA's overtime requirement, which requires employers to pay nonexempt employees "at a rate not less than one and one-half times the regular rate at which he [was] employed[]" for the hours worked exceeding 40 hours. 29 U.S.C. § 207(a)(1).  Both Parties request summary judgment on the issue of whether Rosales and Butler,[3] as employees of ISS, are exempt from the FLSA's overtime requirement under the MCA.  (Dkt. No. 84); (Dkt. No. 85).  The Defendants also ask the Court to grant summary judgment on the issues of good faith and willfulness, which

---

[1]    There are discrepancies in the record as to Rosales's exact dates of employment.  Rosales claims in his Second Amended Complaint that he began his employment with ISS in September of 2017, (Dkt. No. 26 at 3), but the Defendants provide August 2017 as the starting date.  (Dkt. No. 30 at ¶ 15); (Dkt. No. 85 at 8).  Similarly, there is a discrepancy as to Rosales's separation date. The Second Amended Complaint first states that his employment ended in July of 2019, (Dkt. No. 26 at ¶ 15), and then later states that it was August of 2019.  (*Id*. at ¶ 19).  The Defendants state in their Answer that Rosales's separation date occurred in 2019.  (Dkt. No. 30 at ¶ 15).

[2]    According to the deposition testimony of Alpine's Office Manager, Jamie Hawkins, ISS hires laborers as an entry level position, and employees can later be promoted to other positions, such as a welder.  (Dkt. No. 90-1 at 8:14–21).  Rosales started as a laborer and was later promoted to a welder.  (Dkt. No. 90-6 at 5).

[3]    Butler joined as a plaintiff in this case.  (Dkt. No. 3).  In February of 2018, he was employed by Alpine as an entry level welder.  (Dkt. No. 90-3 at 49:12–23); (Dkt. No. 90-7 at 5).  He later transitioned to ISS in April of 2018.  (Dkt. No. 90-7 at 5); (Dkt. No. 9-3 at 67:21–68:12).

affect the FLSA's provision regarding liquidated damages and the statute of limitations, respectively.  (Dkt. No. 86).

## II.     LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A material fact is one that might affect the outcome of the suit under governing law," and "a fact issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quotations omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion," and identifying the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  If a defendant is seeking to obtain summary judgment on an affirmative defense, the moving party "must establish beyond dispute all of the defense's essential elements."  *Bank Of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006).

If the movant meets this burden, the nonmovant must then come forward with specific facts showing there is a genuine issue for trial.  Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  The nonmovant must "go beyond the pleadings and by [the

nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015). "The nonmovant must identify specific evidence in the record and articulate the precise manner in which that evidence supports his or her claim." *Carr v. Air Line Pilots Ass'n Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (cleaned up). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019).

In reviewing a motion for summary judgment, the district court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). This means that factual controversies are to be resolved in the nonmovant's favor, "but only when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## III.     DISCUSSION

### A.     MOTOR CARRIER ACT CROSS MOTIONS

Section 31502 empowers the Secretary of Transportation to regulate motor carriers and motor private carriers. 49 U.S.C. § 31502(b). The maximum hours requirement established by the FLSA does not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of Section 31502 of Title 49." 29 U.S.C. § 213(b)(1). Pursuant to these statutes, the Secretary of Transportation has exempted from the FLSA's maximum hours requirement,

5

> those classes of employees and those only who: (1) are
> employed by carriers whose transportation of passengers or
> property by motor vehicle is subject to his jurisdiction under
> section 204 of the Motor Carrier Act, . . . and (2) engage in
> activities of a character directly affecting the safety of
> operation of motor vehicles in the transportation on the public
> highways of passengers or property in interstate or foreign
> commerce within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2(a) (citations omitted); *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 308 (5th Cir. 2021).  For the motor carrier exemption to apply, "the employees must meet both of these requirements."  *Amaya v. NOYPI Movers, L.L.C.*, 741 Fed. App'x 203, 205 (5th Cir. 2018) (per curiam) (cleaned up) (citation omitted).  Ultimately, "whether an employee is exempt [from the FLSA] is a question of law." *Smith v. City of Jackson, Miss.*, 954 F.2d 296, 298 (5th Cir. 1992); *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000).  In applying the MCA exemption, the Fifth Circuit "has long noted [that] this definition comprises qualifications for both the employer and employee."  *Amaya*, 741 Fed. App'x at 205.  The regulation itself makes clear that the elements of the exemption "depend[] both on the class to which [the employee's] employer belongs and on the class of work involved in the employee's job."  *White*, 996 F.3d at 308 (citing 29 C.F.R. § 782.2(a).  The word "carriers" in the regulation includes "private carriers of property by motor vehicle," in addition to common and contract carriers.  29 C.F.R. § 782.2(b)(1); *White*, 996 F.3d at 308.

Exemptions to the FLSA are not interpreted narrowly but are instead given a fair reading by courts. *Encino Motorcars, LLC v. Navarro*, ____ U.S. ____, ____, 138 S.Ct. 1134, 1142, 200 L.Ed.2d 433 (2018).  Prior to 2018, the Fifth Circuit employed a narrow

interpretation of the FLSA's list of exemptions, a "now-erroneous principle of construction." *Amaya*, 741 Fed. App'x at 204–05 n.2. Despite this change from a narrow interpretation, the Fifth Circuit has stated that it continues to rely on its "prior opinions[4] on the MCA exemption" since "the central analyses of these decisions remain unaffected because they concern the interpretation and application of FLSA-implementing regulations, not the statute itself." *Id.*

### 1. Defendants' Renewed Motion for Summary Judgment on the Motor Carrier Act

The Defendants argue that Rosales and Butler were not entitled to overtime pay because of the MCA exemption from the FLSA. (Dkt. No. 85 at 10–21). The MCA exemption has two elements, and Rosales argues that ISS has failed to establish beyond dispute both "essential element[s][.]" (Dkt. No. 90 at 23). Rosales argues that the exemption does not apply because (1) ISS is not a motor carrier and (2) Rosales did not engage in activities directly affecting the operational safety of commercial vehicles. (*Id.* at 22–28). Additionally, Rosales argues that ISS must establish these two elements "*as to each individual workweek* during which it claims the exemption applies." (*Id.* at 21–23) (emphasis added). ISS argues in reply that a week-by-week analysis is not required because "both the [Department of Labor ("DOL")] and [Department of Transportation ("DOT")] apply a four-month rule" to determine an employee's eligibility. (Dkt. No. 92

---

4    The Fifth Circuit is specifically referring to its prior opinions in *Songer v. Dillon Resources, Inc.*, 618 F.3d 467 (5th Cir. 2010) and *Allen v. Coil Tubing Services, L.L.C.*, 755 F.3d 279 (5th Cir. 2014).

at 4).[5]  The Court finds that ISS failed to satisfy its burden of proving each element of MCA exemption beyond dispute and is not entitled to summary judgment on its affirmative defense.

Gochis separately argues that he is entitled to summary judgment because Rosales has not provided sufficient evidence of an employer-employee relationship between Plaintiffs and Gochis under the FLSA.  (Dkt. No. 85 at 10, 21).  Rosales responds by claiming there is a genuine issue of material fact as to whether Gochis was an employer for FLSA purposes.  (Dkt. No. 90 at 32).  The Court agrees with the Defendants on this point.

      a.      <u>Plaintiffs failed to establish that Gochis was their employer for purposes of the FLSA.</u>

The Defendants contend that Rosales has "no evidence to support" the claim that Gochis acted as either his or Butler's employer.  (Dkt. No. 85 at 21).  The Parties agree, and the law is clear, that an employer-employee relationship must exist "during the unpaid overtime periods claimed" to establish liability under the FLSA.  *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).  Rosales responds that Gochis is an employer under the Fifth Circuit's test for determining whether an employer-employee relationship exists.  (Dkt. No. 90 at 32).  The Court agrees with the Defendants.  (Dkt. No. 92 at 7).

---

[5]  In its original motion, ISS anticipates a potential argument from the Plaintiffs regarding the small-vehicles exception. But the response never makes that argument, so the Court does not address it here.  (Dkt. No. 85 at 18–21).

The Fifth Circuit uses the "economic reality" test to determine "whether an individual or entity is an employer." *Gray v. Powers*, 673 F.3d 352, 354–355 (5th Cir. 2012); *see also Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014) ("We rely on the economic reality test when determining a party's status as an employer under the FLSA."). The economic reality test considers "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Gray*, 673 F.3d at 355 (internal quotation marks omitted). To satisfy the economic reality test, "each element need not be present in every case," but "finding employer status when none of the factors is present would make the test meaningless." *Id.* at 357.

Rosales offers evidence for only one prong of the economic reality test, which is Gochis's deposition testimony that "he determined the rate and method of payment for Rosales and Butler." (Dkt. No. 90 at 32). Not only do the Defendants contest that the Plaintiffs' cited evidence supports that proposition,[6] but they also point out that the Plaintiffs "present no evidence on the remaining elements of the joint employer test." (Dkt. No. 92 at 7). The Court agrees.

---

[6]     The Plaintiffs claim that Gochis "expressly admitted that he determined the rate and method of payment for Rosales and Butler." (Dkt. No. 90 at 32). The deposition testimony they cite to, however, addresses Gochis's responsibility for making the "classification of the laborers and welders [as] exempt from overtime." (Dkt. No. 90-4 at 27:3-4). The Court finds that no reasonable jury could find an employer-employee relationship based solely on Gochis's power to decide that general policy for ISS.

Rosales has failed to provide any evidence for three of the four elements to establish an employer-employee relationship with Gochis.  As a result, the Plaintiffs have failed to raise a genuine issue of fact on this issue, and Gochis is entitled to judgment as a matter of law.[7]  *See Gray*, 673 F.3d at 357.

> b. <u>ISS is not required to establish that the MCA exemption applies on a workweek basis.</u>

Rosales argues that FLSA exemptions are determined on a workweek basis.  (Dkt. No. 90 at 21).  Under this standard, Rosales argues that ISS "must meet its summary-judgment standard burden as to each individual workweek during which it claims the exemption applies."  (*Id.* at 22).  ISS counters that, "unlike other FLSA exemptions, the MCA exemption does not turn on a week-by-week analysis of an employee's duties." (Dkt. No. 85 at 16).  Instead, ISS argues that in the context of the MCA exemption, "[t]he DOT and DOL apply a four-month rule–if an employee can be reasonably called upon to engage in safety-affecting duties within a four-month period[.]"  (*Id.* at 15).

The regulations implementing the MCA exemption provide that "if the bona fide duties of the job performed by the employee are in fact such that he is . . . called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of the character described in paragraph (b)(2) of this section, he comes within the exemption in all workweeks when he is employed at such job."  29 C.F.R. § 782.2(b)(3).  The Fifth Circuit has applied "the general MCA exemption requirements

---

7      As a result of this holding, Gochis is dismissed as a defendant.  The remainder of this Order will reflect that ISS is the sole defendant in this case.

of section 782.2(b)(3), which states that the exemption will be applicable 'even in a workweek when the employee happens to perform no work directly affecting safety of operation,' so long as the employee's *continuing duties* involve activities that affect motor vehicle safety in interstate transport." *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 475 (5th Cir. 2010) (citing 29 C.F.R. § 782.2(b)(3)) (internal quotation marks omitted) (emphasis in original), *abrogation recognized by Amaya*, 741 Fed. App'x at 204–05 n.2.[8]

Both Rosales and Butler testified that the continuing duties of their job include loading and securing trailers. (Dkt. No. 90-2 at 39:22–40:20, 52:1–53:4); (Dkt. No. 90-3 at 63:9-19). Rosales testified that these duties were something welders were expected to perform regularly in the ordinary course of their work, once or twice a week. (Dkt. No. 90-2 at 41:9-12, 51:21-25). The foregoing is confirmed by the written job descriptions. (Dkt. No. 90-8 at 1). Based on the Plaintiffs' continuing job duties, ISS does not need to establish each element of the MCA exemption on a week-by-week basis because "the rule applies regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek, and the exemption will be applicable even in a workweek when the employee happens to

---

[8]    On this point, the Fifth circuit has stated:

> We note that our prior opinions on the MCA exemption enunciated this now-erroneous principle of construction. *See, e.g., Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 283 (5th Cir. 2014); *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 471 (5th Cir. 2010). But the central analyses of these decisions remain unaffected because they concern the interpretation and application of FLSA-implementing regulations, not the statute itself.

*Amaya*, 741 F. App'x at 205 n.2.

11

perform no work directly affecting 'safety of operation.'"  *See Allen v. Coil Tubing Servs.,* *L.L.C.*, 755 F.3d 279, 284 (5th Cir. 2014) (citing 29 C.F.R. § 782.2(b)(3)), *abrogation recognized by Amaya*, 741 Fed. App'x at 204–05 n.2.

> c.    <u>ISS has not established both essential elements of the MCA exemption's affirmative defense.</u>

ISS argues that it is entitled to judgment as a matter of law on the MCA exemption. However, ISS has not established the first element as a matter of law — that it is within the class of a "carrier" subject to the exemption.  ISS argues that "because it is involved in the transportation of materials in interstate commerce to further its commercial enterprise," it is a motor private carrier subject to the Secretary of Transportation's jurisdiction.  (Dkt. No. 85 at 12).  As a result, ISS contends that the MCA exemption to the FLSA applies because the regulation's use of the word "carrier" is inclusive of "both 'motor carriers' and 'motor private carriers.'"  (*Id.* at 11).  However, in the absence of summary judgment evidence establishing that ISS — as opposed to its sister company Alpine — transports the materials, ISS's self-characterization as a motor private carrier leaves room for dispute.

Under Section 204 of the MCA, the Secretary of Transportation has jurisdiction "to regulate common and contract carriers by motor vehicle," and "private carriers of property by motor vehicle."  29 C.F.R. § 782.1(b); *see also* 49 U.S.C. § 31502(b).  The law defines a motor private carrier as:

> a person, other than a motor carrier, transporting property by motor vehicle when (A) the transportation is as provided

in section 13501 of this title;[9] (B) the person is the owner, lessee, or bailee of the property being transported; *and* (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.

49 U.S.C. § 13102(15) (emphasis added); *see e.g.*, 49 U.S.C. § 13102(14) ("The term 'motor carrier' means a person providing motor vehicle transportation for compensation.").

Although ISS manufactures the materials to be transported, (Dkt. No. 85 at 6), the evidence fails to establish that ISS, and not Alpine, is the actual "person . . . transporting property." 49 U.S.C. § 13102(15). In a declaration provided by Brandon Hawkins, ISS's Yard Manager, (Dkt. No. 85-1 at 2), ISS provides evidence that it "is subject to the Department of Transportation's rules for transporting goods," (*Id.* at 5). In saying that "*we* send trucks across state lines," Mr. Hawkins can be understood to be saying that by sending the trucks, ISS is the transporter. (*Id.*) (emphasis added). Still, there is room for dispute as to whether ISS is acting as the transporter because, as Rosales points out in his response, (Dkt. No. 90 at 10), ISS neither owns any vehicles, (Dkt. No. 90-1 at 25:10-24), nor employs any drivers, (*id.* at 21:15-25). In fact, the summary judgment evidence shows

---

[9]   Section 13501 states:

The Secretary and the Board have jurisdiction, as specified in this part, over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier: (1) between a place in: (A) a State and a place in another State; (B) a State and another place in the same State through another State; (C) the United States and a place in a territory or possession of the United States to the extent the transportation is in the United States; (D) the United States and another place in the United States through a foreign country to the extent the transportation is in the United States; or (E) the United States and a place in a foreign country to the extent the transportation is in the United States; and (2) in a reservation under the exclusive jurisdiction of the United States or on a public highway.

that all the vehicles are all owned by Alpine.  (*Id*. at 25:13-17); (Dkt. No. 89-5 at 25:5–17).

Accordingly, the question of who transported the property is one properly resolved by a

jury.  Without any vehicles or drivers—the means necessary to transport material—a

reasonable jury could conclude that ISS is not a person transporting property.

Moreover, even if ISS could show that it was the one "transporting property by

motor vehicle," 49 U.S.C. § 13102(15), ISS has not satisfied one of the three necessary

prongs.  Section 13102(15)(B) requires that the transporting person be "the owner, lessee,

or bailee of the property being transported[.]"  49 U.S.C. § 13102(15)(B).  ISS has not

provided summary judgment evidence that it, as opposed to its sister company Alpine,

was the owner, lessee, or bailee of the "screwpiles" being transported.  (Dkt. No. 85 at 7).

Considering ISS's later admission that ISS "owned no assets" during the time it employed

Rosales and Butler, (Dkt. No. 89 at 8), the evidence does not establish beyond dispute that

ISS meets the requirements to be a motor private carrier.  Therefore, ISS has failed to

establish that Rosales and Butler satisfy the first requirement of the MCA exemption,

employment by an employer subject to the jurisdiction of the Secretary of Transportation.

29 C.F.R. § 782.2(a)(1).  Because the employee "must meet both of these requirements" in

order "for the motor carrier exemption to apply," the Court does not reach the second

element of the exemption.  *Amaya*, 741 Fed. App'x at 205 (citing *Allen*, 755 F.3d at 283).

### 2. Plaintiffs' Motion for Partial Summary Judgment on the Motor Carrier Act Exemption

Rosales argues that the MCA exemption does not apply to ISS because it does not

qualify as a motor carrier. (Dkt. No. 84 at 2).  The Parties agree, however, that Alpine

does.  (*Id.* at 3 n.1); (Dkt. No. 89 at 11).  Rosales does not dispute the second prong of the

exemption.  (Dkt. No. 89 at 14).  Instead, Rosales argues that "ISS is not a motor carrier,"

(Dkt. No. 84 at 3), and "there is no dispute about that fact," (Dkt. No. 91 at 2).  In response,

ISS argues that the MCA exemption applies to them because motor carrier status has been

extended to them by virtue of their relationship as a joint employer of the Plaintiffs with

Alpine.[10]  (Dkt. No. 89 at 16–19).  The Court finds that there are genuine issues of material

fact as to whether ISS and Alpine are joint employers.[11]

> a.  The MCA exemption extends to joint employers.

Rosales relies primarily on *Boutell v. Walling,* to argue that ISS "is not a motor

carrier."  (Dkt. No. 84 at 5); *Boutell v. Walling*, 327 U.S. 463, 66 S.Ct. 631, 90 L.Ed. 786 (1946).

ISS argues that Rosales's reliance on *Boutell* is misplaced because non-carriers acting as

joint employers with a carrier qualify for the MCA exemption.  (Dkt. No. 89 at 16).  The

Court agrees.  The Fifth Circuit has held that the carrier status of one joint employer can

---

[10]   ISS also argues in depth in the Renewed Motion for Summary Judgment on the Merits of Defendants' Motor Carrier Act Exemption Defense that ISS is a "motor private carrier."  (Dkt. No. 85 at 12–13).  ISS incorporates by reference the argument in its response to Rosales's Motion. (Dkt. No. 89 at 11).  For the reasons discussed above, ISS is not a motor private carrier, and the Court does not need to revisit that issue in ruling on the Plaintiffs' Motion.

[11]   Rosales references the fact that ISS "is not registered with the Federal Motor Carrier Safety Administration," implying that lack of registration precludes ISS from being a carrier for purposes of the exemption.  (Dkt. No. 84 at 3 n.1).  Status as a motor carrier for purposes of the exemption depends on "the existence of the Secretary's power to exercise jurisdiction, not the actual exercise of that power."  *Lucas v. NOYPI, Inc.*, No. 4:11-CV-01940, 2012 WL 4754729, at *5 (S.D. Tex. Oct. 3, 2012); *see also White*, 996 F.3d at 307 ("The Secretary of Transportation need only possess the power to regulate the employees at issue; it need not actually exercise that power for the [MCA] exemption to apply.").  Accordingly, the Court agrees with ISS that the lack of registration "has no bearing on the Secretary's power over it under the MCA."  *Lucas*,  2012 WL 4754729, at *5 (finding that the Secretary of Transportation's jurisdiction is not limited to motor carriers registered with the Federal Motor Carrier Safety Administration).

15

extend to another joint employer who otherwise would be a non-carrier. *See Songer*, 618 F.3d at 472 ("Defendants assert that because the Sunset companies are motor carriers and the Sunset companies are joint employers with Dillon, Dillon is also a motor carrier within the meaning of the MCA.").

In *Boutell*, the Supreme Court explained that the MCA exemption could not extend to the employees at issue because "the Commission's jurisdiction is limited to employees of 'carriers' and the record here shows that the men in question are employees of the Service Company, which is not a carrier, rather than of the Drive-Away Company, which is a carrier." *Boutell*, 327 U.S. at 467, 66 S.Ct. at 634. Crucial to the Court's holding was the fact that the "parties ha[d] stipulated and the trial court ha[d] found" that the Service Company and the Drive-Away Company were "entit[ies] separate and distinct" from one another. *Id.* at 465, 66 S.Ct. at 632. Moreover, "the record contain[ed] no suggestion" that the employees of the Service Company "are or should be treated as employees of the Drive-Away Company." *Id.* at 468, 66 S.Ct. at 634.

That is not the case here. The record at this stage reflects that ISS and Alpine are not separate and distinct from one another but are instead viewed as "virtually the same company." (Dkt. No. 89-5 at 5:25). Rosales even refers to Alpine as ISS's "sister company." (Dkt. No. 84 at 2). The record also contains evidence that ISS employees "wear Alpine-branded and Alpine-owned t-shirts and hardhats" on the job. (Dkt. No. 89-2 at 5). ISS provides facts alleging that ISS "owned no assets" at the time it employed Rosales and Butler and that all the equipment used by the Plaintiffs was owned by

Alpine.  (*Id.*).   ISS further provides evidence that the two companies share one headquarters office in Colorado.  (*Id.*); (No. 89-5 at 6:13–16).

In *Boutell*, the parties agreed that the carrier was not an employer of the employees in question.  *Boutell*, 327 U.S. at 468, 66 S.Ct. at 634.  Here, the Parties dispute whether Alpine, who Rosales concedes is a motor carrier, (Dkt. No. 84 at 3 n.1), acted as a joint employer with ISS.  (Dkt. No. 84 at 3); (Dkt. No. 89 at 7–9).   ISS argues that, under the Fifth Circuit's economic reality test, ISS and Alpine are joint employers of Rosales and Butler as a matter of law.  (Dkt. No. 89 at 18–19).

To support the argument that ISS cannot avail itself of carrier status, Rosales cites *Steinmetz v. Mitchell*, which held that "[i]t has been definitely established that one engaged, as defendants in these suits were, in performing services for a carrier or carriers does not thereby himself become a carrier[.]"  268 F.2d 501, 503 (5th Cir. 1959).  Rosales's argument falls short in light of ISS's evidence that the two companies might be joint employers. The Fifth Circuit in *Steinmetz* had no occasion to consider whether acting as joint employers could affect the non-carrier status under the MCA because the employees at issue were "employed not by the United States [Post Office], the carrier, but by a contractor dealing directly with the Post Office Department[.]"  *Id.*

This case more closely resembles the Fifth Circuit's decision in *Songer*, adopting the argument that companies who "operate[] as a joint employer with [a] carrier" satisfy the first prong of the exemption.  *Songer*, 618 F.3d at 472.  Therefore, when a non-carrier acts as a joint employer with a carrier, they too have the status of "a carrier subject to the [Transportation] Secretary's jurisdiction."  *Id.* at 473.   Rosales claims that the Fifth

17

Circuit's ruling in *Songer* conflicts with the previous holding in *Steinmetz* and with the Supreme Court's ruling in *Boutell*. (Dkt. No. 91 at 2–3). On the contrary, a recent case out of the Western District of Texas rejected this argument. *Fiveash v. South East Pers. Leasing, Inc.*, No. 1:20-CV-00866, 2022 WL 1105750, at *4 (W.D. Tex. Apr. 13, 2022). There, a magistrate judge found that the Fifth Circuit's ruling in *Songer* does not conflict with either *Boutell* or *Steinmetz*, in particular, because "neither of these cases involved an allegation that a non-carrier, such as a staff leasing company or professional employer organization, jointly employed the plaintiff employee along with a motor carrier, and as such, neither is in conflict with *Songer*." *Id.* (internal quotation marks omitted).

<blockquote>

b.  <u>There are genuine issues of material facts as to whether ISS and Alpine jointly employed the Plaintiffs.</u>

</blockquote>

As discussed above, the Court looks to the economic reality test to determine whether Alpine acted as an employer for Rosales and Butler. *See Gray*, 673 F.3d at 354–55. The Plaintiffs assert that it was "ISS—not Alpine" that employed them. (Dkt. No. 84 at 3). Because the parties do not dispute ISS's status as an employer, the Court considers only whether Alpine meets the economic reality test.

The summary judgment evidence includes testimony from both Rosales and Butler alleging the general absence of a joint employment relationship. (Dkt. No. 84-2); (Dkt. No. 84-3). In his deposition, Rosales confirms that he was once employed by Alpine but later left and "went to work for ISS." (Dkt. No. 84-2 at 125:9-18). Similarly, Butler confirms that he made an employment "transition" and "went from Alpine to ISS," where he went through a formal "onboarding process" with ISS. (Dkt. No. 84-3 at 17). Despite

the claims made by Rosales and Butler, there are evidentiary disputes as to each of the following elements of the economic reality test: "whether [Alpine]: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Gray*, 673 F.3d at 355 (internal quotation marks omitted).

In response, ISS argues that "Alpine maintained operational control over ISS," (Dkt. No. 89 at 19), and offers conflicting evidence to establish that Alpine acted as an employer for purposes of the economic reality test. (*Id.* at 7–9). The summary judgment evidence offered by ISS indicates that Alpine employee, Jamie Hawkins, was "responsible for interviewing, hiring, disciplining, and firing ISS employees." (Dkt. No. 89 at 7). In her declaration, Hawkins claims that she serves as the Office Manager for both Alpine and ISS, (Dkt. No. 89-2 at 2), but in her prior deposition she states that although she was never directly employed by ISS, "the same management team runs [ISS] as Alpine." (Dkt. No. 89-5 at 5:5–13). Her declaration also states that she was "responsible for interviewing, hiring, disciplining, and firing ISS employees, (Dkt. No. 89-2 at 4), which is consistent with her previous deposition testimony that she is personally involved in the hiring process. (Dkt. No. 90-1 at 11:9–18). The record also contains evidence that Matt Matula, an Alpine employee, (Dkt. No. 89-2 at 5), took part in hiring interviews. (Dkt. No. 85-9 at 2); (Dkt. No. 90-3 at 55:16–18).

ISS provides evidence that Alpine employees supervised and controlled "Plaintiffs' schedules and conditions of employment." (Dkt. No. 89 at 19). Hawkins

stated in a declaration that she is responsible for "setting the schedules for ISS employees, including staffing projects[.]"  (Dkt. No. 89-2 at 4).  She also states that "ISS employees are directly and indirectly supervised by Alpine employees."  (*Id.* at 5); *see also* (Dkt. No. 90–6 at 5); (Dkt. No. 90-7 at 5).  Both Plaintiffs confirmed in their depositions that they were, in fact, supervised by Alpine employees, such as Matula.  (Dkt. No. 89-3 at 103:23–104:2); (Dkt. No. 89-4 at 128:10–20); (Dkt. No. 90-2 at 55:1–8).  Moreover, Butler admits that his supervisor at Alpine continued to be his supervisor after he transitioned over to ISS.  (Dkt. No. 84-3 at 26).

ISS alleges that Alpine's Office Manager, Hawkins, determined the "rate and method of payment" for Rosales and Butler, which was "set to be consistent with employees performing similar work duties for Alpine."  (Dkt. No. 89-2 at 4).  Rosales testified about Hawkins's authority regarding compensation when he recounted that "I was told [by Hawkins] I had to [sign paperwork] or I wasn't going to get a check."  (Dkt. No. 84-2 at 105:6-20).  ISS further asserts that Alpine maintains all of ISS's employment records.  (Dkt. No. 89 at 19).  Stacey Easterday is the Vice President of Alpine, (Dkt. No. 86-2 at 4), but she also "manages all the books and the employment records" for ISS, according to Gochis's deposition testimony.  (Dkt. No. 90-4 at 13:18–22).  Hawkins testified that she too is "responsible for storing ISS's employment records, which are maintained in Alpine's office in Colorado, in Alpine's files and on Alpine's computer servers."  (Dkt. No. 89-2 at 5).  Previous deposition testimony from Hawkins, taken

during discovery in a case against Alpine,[12] supports the notion that she is responsible for handling employment records. (Dkt. No. 89-6 at 6).

The Court finds that the foregoing establishes a genuine issue of material fact on the issue of whether ISS and Alpine are joint employers. If they are, ISS is entitled to the MCA exemption if Alpine qualifies for it. As a result, Rosales's Motion for Summary Judgment on this issue is denied.

### B. DEFENDANTS' RENEWED PARTIAL MOTION FOR SUMMARY JUDGMENT ON WILLFULNESS AND GOOD FAITH

ISS seeks summary judgment on the issues of good faith and willfulness. (Dkt. No. 86). ISS argues that Rosales has failed to offer competent summary judgment evidence establishing a fact question on either good faith or willfulness. (*Id.* at 13–17). Rosales disagrees, further encouraging the Court to defer ruling on these issues until trial. (Dkt. No. 90 at 29–30). The Court agrees with Rosales. The issues of good faith and willfulness should be determined if and when there has been a finding of liability.

### 1. ISS has not Established that it is Entitled to Judgment as a Matter of Law on the Issue of Good Faith.

Congress has given courts broad discretion in deciding whether to award liquidated damages when employers show that they were acting in good faith and had reasonable grounds to believe their actions did not violate the law. 29 U.S.C. § 260. In an action to recover for unpaid overtime compensation,

---

[12]    The previous deposition was taken in *Kelley v. Alpine Site Services, Inc.*, No. 4:19-CV-01152. As an evidentiary matter, Hawkins affirmed the accuracy of her previous testimony in her recent deposition for this matter. (Dkt. No. 90-1 at 24:22–25:4).

> if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith *and* that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages[.]

*Id.* (emphasis added).

The Fifth Circuit has consistently held that employers bear the "substantial burden" of proving to the Court's satisfaction that its action were reasonable and taken in good faith. *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016) (internal quotation marks omitted) ("This court has held that [employers have] . . . the 'substantial burden' of proving to the satisfaction of the trial court that its acts giving rise to the suit are both in good faith and reasonable."); *Singer v. City of Waco, Tex.*, 324 F.3d 813, 823 (5th Cir. 2003). Employers cannot rely on "apathetic ignorance" as the basis for a reasonable belief, *Barcellona v. Tiffany Eng. Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979), because an employer's mere suspicion of a lack of compliance precludes a finding of good faith. *Steele*, 826 F.3d at 246. On the contrary, good faith imposes upon employers a "duty to investigate potential liability under the FLSA." *Id.* (internal quotation marks omitted). A district court's "evaluation of the evidence supporting good faith and reasonableness, however, is a discretionary determination." *Id.*; 29 U.S.C. § 260 (Employers must show good faith "to the satisfaction of the court."). These determinations are reviewed by the Fifth Circuit for abuse of discretion. *Hoenninger v. Leasing Enters., Ltd.*, 803 F. App'x 756, 759–60 (5th Cir. 2020).

22

Rosales requests that the Court defer ruling on good faith until after trial citing *Lipnicki v. Meritage Homes Corp.*, No. 3:10-CV-00605, 2014 WL 923524, at *12 (S.D. Tex. Feb. 13, 2014).  (Dkt. No. 90 at 29).  ISS argues that Rosales fails to provide any basis in law for this delay.  (Dkt. No. 93 at 2) ("*Lipnicki* does not stand for the proposition that willfulness and good faith cannot be resolved at summary judgment.").  *Lipnicki* makes clear that, while "courts do not need to make a good faith ruling until after the jury has rendered a verdict finding violations," it is not precluded from doing so.  *Lipnicki*, 2014 WL 923524, at *12 ("[T]he Court does not think it prudent to rule on the good-faith issue at this stage. There has not yet been a finding of any FLSA violations, so the good faith issue is one that may never need to be decided. Even if the Court were to find at this time that Meritage acted in good faith, that would not preclude the award of liquidated damages in the event the jury finds FLSA violations. The good faith finding merely gives the Court discretion not to award liquidated damages which are otherwise mandatory.").  The Court agrees and follows the reasoning in *Lipnicki* and defer ruling on good faith so that the Court can assess the evidence presented at trial if the jury finds that ISS has violated the FLSA.

### 2.      ISS has not Established that it is Entitled to Judgment as a Matter of Law on the Issue of Willfulness.

Although "the FLSA generally provides for a two-year statute of limitations on actions to enforce its provisions," Congress allows the limit to be extended to three years when the cause of action arises "out of a willful violation."  *Reyes v. Tex. Ezpawn, L.P.*, 459 F. Supp. 2d 546, 565 (S.D. Tex. 2006) (citing 29 U.S.C. § 255(a)); *see also Halferty v. Pulse*

*Drug Co.*, 821 F.2d 261, 271 (5th Cir. 1987).  The burden "of demonstrating willfulness" is on the Plaintiff, who must demonstrate that "an employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'"  *Steele*, 826 F.3d at 248 (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133–34, 108 S.Ct. 1677, 1681, 100 L.Ed.2d 115 (1988)).  Willfulness "refer[s] to conduct that is not merely negligent," and the FLSA's plain language indicates that willful is to be defined by its "common usage" and "is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional.'"  *McLaughlin*, 486 U.S. at 133, 108 S.Ct. at 168 (citation omitted).

Factors that district courts rely upon in making this willfulness determination include:

> (1) admissions that an employer knew its method of payment violated the FLSA prior to the accrual of the action, . . . (2) continuation of a pay practice without further investigation after being put on notice that the practice violated the FLSA, . . . (3) earlier violations of the FLSA that would put the employer on actual notice of the [r]equirements of the FLSA, . . . (4) failure to keep accurate or complete records of employment, and . . . (5) prior internal investigations which revealed similar violations.

*Solano v. Ali Baba Mediterranean Grill, Inc.*, No. 3:15-CV-00555, 2016 WL 808815, at *5 (N.D. Tex. Mar. 2, 2016) (alteration in original) (citations omitted); *Bingham v. Jefferson Cnty., Tex.*, No. 1:11-CV-00048, 2013 WL 1312563, at *14 (E.D. Tex. Mar. 1, 2013).

Rosales argues that ISS acted willfully and points to evidence, uncontested by ISS, that Alpine was audited "on multiple occasions" and that Alpine has been "previously sued in connection with the exact same pay practice complained of in this lawsuit."  (Dkt.

No. 90 at 30).  Because the issue of willfulness is generally a fact question, *see Singer*, 324 F.3d at 821, the Court defers this issue unless and until the jury finds that ISS has violated the FLSA.

## IV.      CONCLUSION

In light of the foregoing, the Court **DENIES** the Plaintiffs' Motion for Partial Summary Judgment as to the Motor Carrier Exemption.  (Dkt. No. 84).

The Court **GRANTS in part** and **DENIES in part** the Defendants' Renewed Motion for Summary Judgment on the Merits of Defendants' Motor Carrier Act Exemption Defense.  (Dkt. No. 85).  All claims against Defendant Bernard Gochis are **DISMISSED WITH PREJUDICE** and the Clerk is **DIRECTED TO TERMINATE** Gochis as a party to this case.

Finally, the Court **DENIES** the Defendants' Renewed Motion for Partial Summary Judgment on the Issues of Willfulness and Good Faith.  (Dkt. No. 86).

It is SO ORDERED.

Signed on September 30, 2022.

_Drew B Tipton_

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**