## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| **ROSENDO JOSEPH ROSALES, III,** **Individually and On Behalf of All Others Similarly Situated,** | § § § § | |
| **Plaintiff,** | § § | |
| **vs.** | § § | **CIVIL ACTION NO. 6:20-CV-00030** |
| **INDUSTRIAL SALES & SERVICES, LLC,** | § § § | |
| **Defendant.** | § § | |

## <u>DEFENDANT'S MOTION FOR JUDGMENT</u>

**MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.**
James M. Cleary, Jr.
Federal I.D No. 15499
State Bar No. 00783838
808 Travis, Suite 1100
Houston, Texas 77002
Telephone: (713) 632-1700
Facsimile: (713) 222-0101
Email: *cleary@mdjwlaw.com*

**ATTORNEY-IN-CHARGE FOR DEFENDANT,**
**INDUSTRIAL SALES & SERVICES, LLC**

**OF COUNSEL:**
MARTIN, DISIERE, JEFFERSON
  & WISDOM, L.L.P.
Elizabeth Mata Kroger
Federal I.D. No. 29713
State Bar No. 13184385
*kroger@mdjwlaw.com*
808 Travis, Suite 1100
Houston, Texas 77002
Telephone:    (713) 632-1700
Facsimile:    (713) 222-0101

Steven W. Watkins
*Admitted pro hac vice*
BRADLEY DEVITT HAAS & WATKINS, P.C.
2201 Ford Street
Golden, Colorado 80401
303.384.9228 (Telephone)
303.384.9231 (Fax)
steve@goldenlawyers.com

## **<u>TABLE OF CONTENTS</u>**

Table of Authorities ............................................................................................................... ii

I.     Introduction of the Dispute ........................................................................................ 1

II.    Statement of Facts ....................................................................................................... 1

III.   Argument ..................................................................................................................... 7

      A.      Summary ......................................................................................................... 7

      B.      The MCA Exemption Applies. ...................................................................... 7

               1.      Alpine is a Motor Private Carrier ................................................... 8

               2.      The Exemption Applies to Joint Employers; Alpine and ISS are Joint Employers. ............................................................................. 9

               3.      Plaintiffs' Duties Directly Affected the Safe Operation of Motor Vehicles ....................................................................................... 12

      C.      The Small Vehicle Exception Does Not Apply. ........................................ 12

      D.      Plaintiffs Cannot Establish a Willful Violation of the FLSA. ............................... 13

      E.      ISS Acted in Good Faith ............................................................................ 14

IV.    Conclusion ................................................................................................................. 15

Certificate of Word Count .................................................................................................. 16

Certificate of Service .......................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alexander v. Tutle & Tutle Trucking, Inc.*,
   834 F.3d 866 (8th Cir. 2016) ................................................................. 10

*Allen v. Fusion Autoplex, LLC*,
   2017 WL 1215431 (S.D. Tex. Mar. 31, 2017) ................................. 13, 14

*Boutell v. Walling*,
   327 U.S. 463 (1946) .............................................................................. 11

*Brantley v. Inspectorate Am. Corp.*,
   821 F. Supp. 2d 879 (S.D. Tex. 2011) ................................................... 15

*Carley v. Crest Pumping Techs., L.L.C.*,
   890 F.3d 575 (5th Cir. 2018) ................................................................. 13

*Chaohui Tang v. Wing Keung Enters.*,
   210 F. Supp. 3d 376 (E.D.N.Y. 2016) ................................................... 13

*Fiveash v. S.E. Personnel Leasing, Inc.*,
   2022 WL 1105750 (W.D. Tex. 2022) ..................................................... 11

*Lee v. Coahoma Cnty.*,
   937 F.2d 220 (5th Cir. 1991) ................................................................. 15

*Levinson v. Spector Motor Serv.*,
   330 U.S. 649 (1947) .............................................................................. 12

*Lucas v. NOYPI, Inc.*,
   2012 WL 4754729 (S.D. Tex. 2012),
   *aff'd*, 536 F. App'x 416 (5th Cir. 2013) .............................................. 9, 10

*McLaughlin v. Richland Shoe Co.*,
   486 U.S. 128 (1988) .............................................................................. 13

*Mendoza v. HoHoHo Express, Inc.*,
   2014 WL 1882756 (S.D. Tex. May 12, 2014) ........................................ 10

*Mireles v. Frio Foods, Inc.*,
   899 F.2d 1407 (5th Cir. 1990) .......................................................... 14, 15

*Moore v. Universal Coordinators, Inc.*,
   423 F.2d 96 (3d Cir. 1970) .................................................................... 10

*Nolasco v. AKS Cartage Corp.*,
   2018 WL 2322599 (S.D. Fla. 2018) ...................................................... 10

*Singer v. City of Waco*,
　324 F.3d 813 (5th Cir. 2003) ......................................................................... 13

*Songer v. Dillon Res., Inc.*,
　618 F.3d 467 (5th Cir. 2010), *abrogated on other grounds by*
　*Amaya v. Noypi Movers, L.L.C.*,
　741 F. App'x 203 (5th Cir. 2018) ........................................................... 7, 8, 9, 12

*Steele v. Leasing Enters.*,
　826 F.3d 237 (5th Cir. 2016) ......................................................................... 14

*Steinmetz v. Mitchell*,
　268 F.2d 501 (5th Cir. 1959) ......................................................................... 11

*Tidd v. Adecco USA, Inc.*,
　2010 WL 996769 (D. Mass. 2010) .................................................................. 11

*Velez v. New Haven Bus Serv., Inc.*,
　2015 WL 75361 (D. Conn. 2015) ................................................................... 11

*White v. U.S. Corrections, LLC*,
　2022 WL 1491349 (W.D. Tex. 2022) ........................................................ 11, 12

**Statutes**

29 C.F.R. § 782.1(b) .......................................................................................... 8

29 C.F.R. § 782.2(a) .......................................................................................... 8

29 C.F.R. § 782.2(b)(2) .................................................................................... 12

29 U.S.C. § 213 .................................................................................................. 7

29 U.S.C. § 213(b)(1) ...................................................................................... 1, 7

29 U.S.C. § 216(b) ............................................................................................ 14

29 U.S.C. § 260 ........................................................................................... 14, 15

49 U.S.C. § 13102(15) ........................................................................................ 8

49 U.S.C. § 13501(1)(A) ..................................................................................... 8

49 U.S.C. § 31502(b)(1) ..................................................................................... 8

49 U.S.C. § 31502(b)(2) ..................................................................................... 8

**Rules**

Fed. R. Civ. P. 52(c) ..................................................................................................... 1

<u>**DEFENDANT'S MOTION FOR JUDGMENT**</u>

Defendant Industrial Sales & Services, LLC ("ISS") moves for judgment, as follows:

## I.    <span>INTRODUCTION OF THE DISPUTE</span>

This two-plaintiff FLSA dispute hinges on whether they are exempt from overtime under the Motor Carrier Act ("MCA") exemption, 29 U.S.C. §213(b)(1).  One business day prior to a bench trial, the parties stipulated to all relevant facts (Dkt. 122), thereby obviating the need for trial. Because the MCA exemption clearly applies to the Plaintiffs based upon the stipulated facts, ISS moves for judgment pursuant to Fed. R. Civ. P. 52(c).

## II.    <span>STATEMENT OF FACTS</span>

In their Stipulated Findings of Fact (Dkt. 122),[1] and in lieu of a bench trial, the parties agreed to the following dispositive facts:[2]

1.    ISS manufactures engineered screwpiles, a foundation system used in construction applications. ISS workers are engaged by sister company, Alpine Site Services Inc. ("Alpine"), to manufacture the screwpiles. Dkt. 122 ¶1.

2.    ISS manufactures screwpiles in two facilities, called "yards," in Commerce City, Colorado and Edna, Texas. *Id.* ¶2.

3.    Alpine sells, delivers, and installs the screwpiles at jobsites throughout the United States, including Louisiana, Mississippi, New Jersey, New Mexico, New York, Ohio, Oklahoma, Pennsylvania, and Wyoming. *Id.* ¶3.

4.    ISS employees load and secure the screwpiles onto 45-foot flat-deck trailers for transport to Alpine's jobsites across the country, where they are installed. *Id. ¶4*. The trailers travel

---

[1] For ease of review, the Stipulated Findings of Fact are attached as Exhibit "A."

[2] To conform with the Court's procedures regarding briefs, ISS has omitted or truncated some of the stipulations.  Further, shortly before the Stipulated Findings of Fact were filed, Plaintiffs agreed to nearly all of them through their Admissions of Fact (Dkt. 121).

out of state on a regular basis, and the majority of the jobsites are outside of Colorado and Texas. *Id.*

5.      Alpine is the only company for which ISS manufactures screwpiles. *Id.* ¶5.  ISS does not perform these services, or any other services, for any other company. *Id.*

6.      The flatbed trailers used to transport the screwpiles weigh more than 10,001 pounds, per gross vehicle weight ratings ("GVWRs"). *Id.* ¶6.

7.      Alpine is a private motor carrier and therefore subject to Department of Transportation ("DOT") rules for transporting goods, and the transportation of such goods is done to further its commercial enterprise. *Id.* ¶7.

8.      Plaintiffs, who worked at both the ISS yard in Texas and at Alpine's job sites, were responsible for loading and securing screwpiles onto trailers for transport when they worked in the yard, together with other yard workers. *Id.* ¶8.

9.      When they [the Plaintiffs] worked in the yard in Texas, they also loaded and secured trailers with other equipment for the jobsites, including cap plates, which are welded to installed screwpiles at the jobsite. *Id.* ¶9.

10.     Plaintiffs' safety-affecting duties also included checking trailers for safety items, inspecting trailers' lights and tires, and inspecting trailers for damage that could undermine their safe operation, as well as assisting drivers in backing trailers into position for loading. *See id.* ¶10.

11.     Rosales began working for ISS in August 2017 as a laborer at ISS's Texas yard. *Id.* ¶11.  He soon transitioned from laborer to welder. *Id.*  As part of his job duties, Rosales was called upon to load trailers, secure loads for transport, and check trucks for safety items.  *See id.*

12.     Rosales testified he performed safety-affecting duties regularly, including securing screwpile loads on trailers for safe travel approximately one or two times per week.  *Id.* ¶12.

13.    Butler worked as a welder for Alpine for two months, then transitioned to ISS's Texas yard in April 2018. *Id.* ¶13. As part of his job duties, Butler loaded trailers, secured loads for transport, and checked trucks for safety items. *See id.*

14.    Butler loaded screwpiles and pier caps onto trailers with a forklift or skid steer approximately weekly. *Id.* ¶14. He secured loads for transport approximately weekly. *Id.* In addition to loading and securing Butler, at least weekly, checked trailers to ensure proper functioning of safety items such as lights, brakes, tires, and horns. *Id.*

15.    The flatbed trailers on which Plaintiffs loaded and secured items and which Plaintiffs checked for safety items had a GVWR of 10,001 pounds or more. *Id.* ¶15.

16.    The loaded trailers traveled in interstate commerce on interstate highways. *Id.* ¶16.

17.    Improper loading and securing of these trailers could cause catastrophic damage to the trailer, the tractor, the driver, other vehicles on the public roads, and the general public. *Id.* ¶17. The size and weight of the loads presented a danger to safety on public roads; if they became untethered or dislodged in transit, they could cause an accident resulting in injury or death. *Id.*

18.    Plaintiffs, as part of their job duties, were expected to and did in fact load and secure screwpiles and other equipment onto flatbed trailers weighing more than 10,001 GVWR for transport to Alpine's jobsites across the country, and such transport included transportation across state lines on the public highways. *Id.* ¶18.

19.    Plaintiffs performed these safety-affecting job duties on at least a weekly basis. *Id.* ¶19.

20.    Plaintiffs' loading and securing duties had a significant effect on the safety of vehicles in interstate transportation inasmuch as improper loading or securing could cause

catastrophic damage to the flatbed, the tractor, the driver, and other vehicles on the public roads, and the general public. *See id.* ¶20.

21.    From the beginning of the company, Alpine classified employees who performed safety-affecting duties as exempt under the MCA exemption. *Id.* ¶21.

22.    Prior to 2009, yard workers like Plaintiffs were paid directly by Alpine. *Id.* ¶22. In 2009, Alpine spun off ISS as the payroll employer of workers located at the manufacturing yards for reasons associated with workers compensation and jobsite safety ratings. *Id.*

23.    Upon ISS's founding, the workers responsible for loading and securing trailers for transport to Alpine's jobsites, who up to that point had been employed by Alpine, became ISS payroll employees. *Id.* ¶23. Nothing about the yard employees' job duties, supervisors, or overall management changed as part of that corporate reorganization. *Id.* Accordingly, ISS, as the payroll employer, continued to classify those employees as exempt. *Id.*

24.    Both Plaintiffs filed opt-in consents to join a separate lawsuit filed by their counsel against Alpine, which was also pending in the Southern District of Texas, Houston Division. *See Kelley v. Alpine Site Services, Inc.,* No. 4:19-cv-01152 (S.D. Tex.).[3] In *Kelley*, the plaintiffs conceded that Alpine is a motor private carrier for purposes of the MCA exemption. Dkt. 122 ¶36. On February 7, 2023, Final Judgment was issued in favor of Alpine in *Kelley* with the court finding that the plaintiffs in that matter were covered by the MCA exemption and were not entitled to overtime. *Id.*

25.    Alpine and ISS were joint employers of Plaintiffs Rosales and Butler for the time periods made the basis of this litigation. *Id.* ¶37.

---

[3] The plaintiffs in *Kelley* recently appealed the matter to the United States Court of Appeals for the Fifth Circuit.

26.     In April 2009, the Department of Labor ("DOL") investigated Alpine's pay practices. *Id.* ¶38. The investigation reviewed every position at Alpine for the preceding two years and specifically those yard employees who performed safety-affecting duties as described above. *Id.* Thus, although ISS was created in the same year as the investigation, its payroll employees were examined as part of the 2009 Alpine DOL audit. *Id.*

27.     The DOL investigator determined that Alpine properly compensated the majority of its employees and found violations as to only nine employees. *Id.* ¶39. Those nine employees received back wages, not because the MCA exemption did not apply, but because Alpine did not adequately document the job duties those employees performed. *Id.*

28.     To document compliance going forward, Alpine discussed several options with the DOL investigator. *Id.* ¶40. Based on these discussions, Alpine established a process for employees to complete a weekly report of the safety-affecting duties they performed. *Id.* That report, which Alpine and ISS call the "Employee Work Report," was submitted to the DOL for its review. *Id.* Receiving no negative feedback from the DOL, Alpine and ISS implemented the Employee Work Reports and asked their employees to complete them on a weekly basis. *Id.*

29.     Plaintiffs completed the Employee Work Reports during their employment with ISS. *Id.* ¶41.

30.     Alpine was audited by the DOL twice more, once in 2010 and once in 2014, and the DOL found no violations, including as to those employees classified as exempt pursuant to the MCA exemption. *Id.* ¶42.

31.     Additional required documents and notices were provided by Alpine and ISS to further inform employees of their exempt status from FSLA overtime requirements. For example, Alpine and ISS give full disclosure in job postings and in candidate interviews that job positions

that perform safety-affecting duties will not be paid an overtime premium, but instead will receive straight time for hours over 40 per week. *Id.* ¶43.

32.    New hires are also made aware of this policy as part of their new hire paperwork, which explains the legal basis of the MCA exemption and the safety-affecting duties the employees are expected to perform. *Id.* ¶44.

33.    Alpine office staff also keep a direct line of communication with Alpine and ISS employees, and if employees have questions about the MCA exemption, they are free to ask office staff. *Id.* ¶45.

34.    New hires at both Alpine and ISS are required to take and pass a DOT physical, which is required for any person who will drive a vehicle weighing 10,001 pounds GVWR or more. *Id.* ¶46. New hires also complete safety training, which includes training concerning load securement and DOT inspections. *Id.*

35.    ISS continues to conduct regular internal audits of its Employee Work Reports. *Id.* ¶47.

36.    ISS and Alpine also reach out to third-party DOT consultants as appropriate for guidance on DOT rules and regulations, and Alpine belongs to the Colorado Motor Carriers Association, which provides educational training and information to its members. *Id.* ¶48. Alpine has sought legal opinions as to whether its classification of its employees as exempt was proper, including from a retired federal Magistrate Judge concerning the applicability of the MCA exemption to its workforce. *Id.*

37.    Alpine is and has been at all relevant times a "motor private carrier" for purposes of the MCA exemption. *Id.* ¶49.

38.     Plaintiff Rosales worked for ISS from August 28, 2017, to July 31, 2019. *Id.* ¶50. Plaintiff Butler worked for ISS from April 23, 2018, to September 17, 2020. *Id.*

### III.     <u>ARGUMENT</u>

**A.     Summary**

The MCA exemption applies to Plaintiffs. The record shows (a) Alpine is a motor private carrier; (b) Alpine and ISS were joint employers of Plaintiffs; and (c) Plaintiffs were expected to, and did, perform duties directly affecting the safety of the operation of motor vehicles on public highways. Plaintiffs cannot show the Small Vehicle Exception applies to their work for ISS. Alternatively, the undisputed evidence shows ISS did not willfully misclassify Plaintiffs but, instead, acted at all times in good faith and with a reasonable belief that its actions were in accordance with the FLSA.

**B.     The MCA Exemption Applies.**

The FLSA exempts certain employees from its overtime requirements. 29 U.S.C. § 213; *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 471 (5th Cir. 2010), *abrogated on other grounds by Amaya v. Noypi Movers, L.L.C.*, 741 F. App'x 203 (5th Cir. 2018). The MCA exemption states the FLSA's overtime requirement shall not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service." 29 U.S.C. § 213(b)(1).

"The Secretary [of Transportation] need only possess the power to regulate the employees at issue; it need not actually exercise that power for the MCA to apply." *Songer*, 618 F.3d at 472 (citation omitted). Under DOL regulations interpreting the MCA exemption, the Secretary of Transportation ("Secretary") has the power to "establish qualifications and maximum hours of service" over those employees who:

(1)    Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to [the Secretary's] jurisdiction under section 204 of the Motor Carrier Act,  and

(2)    engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2(a). "Carriers" includes both "motor carriers" and "motor private carriers." *Id.* § 782.1(b); 49 U.S.C. § 31502(b)(1) -(2).

Thus, "application of the MCA exemption to an employee 'depends both on the class to which his employer belongs and the class of work involved in the employee's job.'" *Songer*, 618 F.3d at 472 (quoting 29 C.F.R. § 782.2(a)). To determine whether the MCA exemption applies, the Court must examine: (1) whether the employer qualifies as a motor carrier or motor private carrier; and (2) whether the employees perform duties that affect the safe operation of motor vehicles in interstate transportation.  29 C.F.R. § 782.2(a). If these questions are answered in the affirmative, the MCA exemption applies, and the employees at issue are not entitled to overtime.

*1.    Alpine is a Motor Private Carrier.*

Alpine is a "motor private carrier" because it is involved in the transportation of materials in interstate commerce to further its commercial enterprise. The term "motor private carrier" is defined as a person "transporting property by motor vehicle" when:

(A) the transportation is as provided in section 13501 of this title;

(B) the person is the owner, lessee, or bailee of the property being transported; and

(C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise.

49 U.S.C. § 13102(15). Section 13501(1)(A) establishes DOT jurisdiction "to the extent that . . . property [is] transported by motor carrier between a place in a State and a place in another State." *Id.* § 13501(1)(A).

Indeed, the parties have stipulated that Alpine is a "motor private carrier" for the purposes of the MCA exemption. Dkt. 122 ¶ 49. This fact is also proven by other undisputed evidence. ISS manufactures screwpiles in Colorado and Texas. *Id*. ¶ 2. Its employees load and secure those screwpiles onto trailers, which Alpine then transports from Colorado or Texas to other states, including Louisiana, Mississippi, New Jersey, New Mexico, New York, Ohio, Oklahoma, Pennsylvania, and Wyoming. *Id.* ¶¶ 3-4. Alpine is indisputably a private motor carrier for the purposes of the MCA exemption.

    2.    *The Exemption Applies to Joint Employers; Alpine and ISS are Joint Employers.*

The parties further stipulated that Alpine and ISS were joint employers of Plaintiffs. Dkt. 122 ¶ 37; *see also id*. ¶¶ 24-35. Employees jointly employed by a carrier and another entity are subject to the MCA exemption, as the Fifth Circuit unmistakably held in *Songer*.

In *Songer*, defendant Dillon was a staffing company that provided drivers to defendants Sunset Logistics and Sunset Ennis. 618 F.3d at 469. Dillon hired and trained employees and was responsible for their payroll, while the Sunset companies were responsible for control of the employees' day-to-day operations. *Id.* at 473. While the plaintiffs conceded the Sunset companies were carriers, they argued Dillon could not avail itself of the MCA exemption because it was not a carrier. *Id.* at 472. The Fifth Circuit rejected this argument, noting Congress' intent to regulate employees of carriers in the interest of safety. *Id.* at 472-73. The Fifth Circuit reasoned the DOT's regulatory authority would be circumvented if it refused to extend DOT jurisdiction to the employees at issue, who performed duties that unquestionably affected safety, regardless of whether Dillon qualified as a carrier. *Id.* at 473. Dillon therefore could avail itself of the MCA exemption. *Id.*

Relying on the Fifth Circuit's clear analysis in *Songer*, Judge Lake similarly concluded in *Lucas v. NOYPI, Inc.,* 2012 WL 4754729 (S.D. Tex. 2012), *aff'd*, 536 F. App'x 416 (5th Cir.

9

2013), that the MCA exemption applied to two entities jointly employing loaders. *Id.* at *5. Defendants NOYPI and Pioneer entered into a subcontract agreement under which NOYPI provided laborers who performed loading duties for Pioneer. *Id.* at *1. In reasoning that both defendants could be considered carriers, the court cited *Songer* for the proposition that "where the MCA exemption applies to one employer the existence of a joint employer relationship extends the exemption to all joint employers in a suit brought under 29 U.S.C. § 207." *Id.*; *Mendoza v. HoHoHo Express, Inc.*, 2014 WL 1882756, at *2 n.2 (S.D. Tex. May 12, 2014) ("as joint employers, Ho and HoHoHo are both subject to the Secretary of Transportation's jurisdiction as motor carriers. This finding is supported by the congressional purpose to regulate employees of carriers in the interest of safety, and joint employers of a covered motor carrier should thus be subject to the Secretary's power").

Other circuit courts are in accord. The Third Circuit opined "it is clear that in interpreting [the MCA and FLSA] we must recognize that Congress has attached primary importance to the regulation of employees of carriers in the interests of safety." *Moore v. Universal Coordinators, Inc.*, 423 F.2d 96, 99 (3d Cir. 1970). In *Moore*, the Third Circuit held the MCA exemption applied to drivers employed by staffing companies because "the Secretary's power to promote safety of operation would be rendered nugatory if he were powerless to prevent a carrier from using unqualified and overtired drivers simply because the drivers are technically the employees of a manpower-supply agency." *Id.* at 100; *see also Alexander v. Tutle & Tutle Trucking, Inc.*, 834 F.3d 866, 869-70 (8th Cir. 2016) ("assuming for the sake of analysis that Schlumberger is a joint employer of the drivers, Schlumberger also would be a carrier subject to the jurisdiction of the Secretary by virtue of its joint employer status"); *Nolasco v. AKS Cartage Corp.*, 2018 WL 2322599, at *8 (S.D. Fla. 2018) ("if the Court determines that at least one defendant meets the

10

requirements of the MCA exemption, the Court will apply this exemption to all of the defendants"); *Tidd v. Adecco USA, Inc.*, 2010 WL 996769, at *2 (D. Mass. 2010) ("[b]y the plaintiffs' own pleading . . . they were jointly employed by FedEx, a motor carrier. Refusing to extend the [MCA] exemption to the staffing agency defendants would therefore facilitate what Congress sought to prohibit— circumvention of the Secretary's regulatory authority"); *Velez v. New Haven Bus Serv., Inc.*, 2015 WL 75361, at *7 (D. Conn. 2015) (finding entity acting as joint employer with carrier could invoke MCA exemption).

Defendant anticipates that Plaintiffs will once again argue that *Songer* was wrongly decided and conflicts with *Boutell v. Walling,* 327 U.S. 463 (1946), and *Steinmetz v. Mitchell,* 268 F.2d 501 (5th Cir. 1959). This Court has considered and correctly rejected that argument on two occasions. *See* Dkt. 96 at 17 ("[t]he Fifth Circuit in *Steinmetz* had no occasion to consider whether acting as joint employers could affect the non-carrier status under the MCA because the employees at issue were 'employed not by the United States [Post Office], the carrier, but by a contractor dealing directly with the Post Office Department'"); Dkt. 108 at 7 ("[n]ot only has application of the MCA exemption to joint employers been squarely 'addressed by the Fifth Circuit,' … it has also been found to present no conflict with previous rulings").

Plaintiffs' counsel has raised this argument with other trial courts, and they too have rejected it.  In *Fiveash v. S.E. Personnel Leasing, Inc.,* 2022 WL 1105750 (W.D. Tex. 2022), Plaintiffs' counsel argued "that *Songer* directly conflicts with Supreme Court and Fifth Circuit precedent and should be disregarded." *Id*. at *4. The court rejected that argument as "neither of these cases 'involved an allegation that a non-carrier, such as a staff leasing company or professional employer organization, jointly employed the plaintiff employee along with a motor carrier,' and as such, neither is in conflict with *Songer." Id.* (cleaned up); *see also White v. U.S.*

*Corrections, LLC,* 2022 WL 1491349, at * 6 (W.D. Tex. 2022) ("White presents no evidence that South East did not act as her employer. Instead, she argues that South East's motion for summary judgment should be denied because it is not a motor carrier, relying on *Boutell* and *Steinmetz*. These cases did not involve employees jointly employed by a motor carrier and a staff leasing company or professional employer organization and thus are inapposite") (cleaned up)*.*

3.    *Plaintiffs' Duties Directly Affected the Safe Operation of Motor Vehicles.*

Employees who work as drivers, drivers' helpers, loaders, and mechanics, even if those duties are only a minor part of their work, are covered by the MCA exemption and are presumed to perform duties affecting highway safety. 29 C.F.R. § 782.2(b)(2); *Levinson v. Spector Motor Serv.*, 330 U.S. 649, 680-81 (1947); *Songer*, 618 F.3d at 474.

Here, Plaintiffs performed safety-affecting duties sufficient for the MCA exemption to apply and Plaintiffs have stipulated as such. Dkt. 122 ¶¶ 8-14, 18-20. Plaintiffs have also stipulated they performed these duties on at least a weekly basis. *Id.* ¶ 19. This is more than sufficient given that the DOT and DOL apply a four-month rule—if an employee can be reasonably called upon to engage in safety-affecting duties within a four-month period, the MCA applies. *See, e.g.,* DOL Opinion Letter FLSA2006-3 at 2 (noting "DOT's jurisdiction . . . applies for a four-month period beginning on the date a driver could have been called upon to, or actually did, engage in interstate commerce").

**C.    The Small Vehicle Exception Does Not Apply.**

Under the Small Vehicle Exception, "the MCA exemption does not apply 'to employees (1) who are employed by a motor carrier or motor private carrier, (2) whose work, in whole or in part, is defined as that of a driver, driver's helper, loader, or mechanic and affects the safety of motor vehicles weighing 10,000 pounds or less in transportation on public highways, and (3) who perform duties on motor vehicles weighing 10,000 pounds or less." Dkt. 66 at 30 (citation omitted).

Plaintiffs bear the burden of showing the small vehicle exception applies, including establishing the weight of the vehicles. *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 580 (5th Cir. 2018). Plaintiffs cannot meet this burden.  The only evidence in the record regarding weight shows that Plaintiffs worked on vehicles weighing in excess of 10,001 pounds.  Dkt. 122 ¶¶ 6, 15, 18. When "the parties agree" that the vehicles in question weigh over 10,000 pounds, the small vehicle exception does not apply. *Chaohui Tang v. Wing Keung Enters*., 210 F. Supp. 3d 376, 391 (E.D.N.Y. 2016).  Plaintiffs have provided no evidence to contradict this fact.

**D.     Plaintiffs Cannot Establish a Willful Violation of the FLSA.**

Because Plaintiffs cannot show an FLSA violation to begin with, they certainly cannot show a willful FLSA violation.  Thus, the Court need not reach this argument or the next. Nevertheless, out of the proverbial abundance of caution, ISS shows below that there was no willful violation and that it acted in good faith. To the extent the Court finds a violation of the FLSA, ISS requests judgment in its favor on the issues of willfulness and good faith.

When Congress enacted the Portal-to-Portal Act in 1947, it established a two-year statute of limitations for all FLSA violations. *McLaughlin v. Richland Shoe Co*., 486 U.S. 128, 131-32 (1988) (discussing legislative history). In 1966, Congress extended the FLSA's limitations period to three years, but only for "willful" violations. *Id.*; 29 U.S.C. § 255(a).

The three-year limitations period applies only if the defendant "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin,* 486 U.S. at 133. "Willful" is synonymous with "voluntary," "deliberate," and "intentional," and "refer[s] to conduct that is not merely negligent." *Id.* When employers have knowledge that they are violating the FLSA and choose to continue to do so, their conduct is willful. *See Singer v. City of Waco*, 324 F.3d 813, 821-22 (5th Cir. 2003). "Conduct that is merely negligent or unreasonable, however, does not rise to the level of a 'willful' violation." *Allen v. Fusion Autoplex, LLC*, 2017

WL 1215431, at *3 (S.D. Tex. Mar. 31, 2017) (citing *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990)).

Plaintiffs bear the burden of establishing willfulness. *Steele v. Leasing Enters.*, 826 F.3d 237, 248 (5th Cir. 2016) (citations omitted). Here, Plaintiffs cannot meet their burden. There is no evidence that ISS willfully violated the FLSA by classifying Plaintiffs as exempt under the MCA exemption. ISS expects its employees to perform safety-affecting activities that fall under the exemption, employees routinely attest to the fact that they are performing those duties in the course of their employment, and Plaintiffs themselves testified that they performed those duties on a regular basis. *See* Dkt. 122 ¶¶ 38-48.

ISS's lack of willfulness is bolstered by its sister company Alpine's history with DOL investigations, including the ones in 2009, 2010 and 2014 that found no violations, and Alpine's collaboration with the DOL to create the Employee Work Reports as a system for documenting compliance with the MCA exemption. *Id.* Finally, Judge Hanks recently found that Alpine correctly applied the MCA exemption to its employees. *Id.* ¶ 36. Given that ISS and Alpine are joint employers, ISS is entitled to a lack-of-willfulness finding.

## E.   ISS Acted in Good Faith

The FLSA provides for an award of liquidated damages in an amount equal to the amount of compensatory damages. 29 U.S.C. § 216(b). Liquidated damages were originally mandatory any time a violation of the FLSA was found, but, in the Portal-to-Portal Act of 1947, Congress amended the FLSA to allow the district court discretion in awarding liquidated damages. *Id.* § 260. Section 260 provides:

> In any action . . . to recover . . . under the [FLSA], if the employer shows to the satisfaction of the court that such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation . . . the Court may, in its discretion award no liquidated damages or award any amount thereof not to exceed the damages specified in Section 216 of [the FLSA].

*Id.* In other words, if a district court finds that the employer's action that violated the FLSA was taken in good faith, and the employer's good faith was supported by reasonable grounds for believing that the actions complied with the FLSA, the district court may choose not to award liquidated damages. *Lee v. Coahoma Cnty.,* 937 F.2d 220, 226-27 (5th Cir. 1991). The employer bears the burden of showing its actions were in good faith and predicated upon reasonable grounds. *Mireles*, 899 F.2d at 1415. The good-faith defense requires that the employer take active steps to ascertain and comply with the FLSA. *Brantley v. Inspectorate Am. Corp.*, 821 F. Supp. 2d 879, 895 (S.D. Tex. 2011).

Here, the evidence proves ISS acted in good faith. ISS relied upon not only its own research, analysis, and understanding of the exemption, but also the interactions of its sister company with the DOL, including active collaboration with a DOL investigator on how best to document its use of the exemption, and the legal analysis Alpine obtained from a former federal judge. *See* Dkt. 122 ¶¶ 38-48.

ISS's evidence conclusively establishes that it acted in good faith in classifying its employees as exempt under the MCA exemption. Plaintiffs can point to no evidence that would raise a genuine issue of material fact on this point. As such, in the unlikely event liability is found, the Court should exercise its discretion to deny any requested award of liquidated damages.

## IV.    CONCLUSION

Wherefore, Defendant respectfully requests that this Court enter judgment in its favor and dismiss Plaintiffs' claims with prejudice, and grant it whatever further relief to which it shows itself to be justly entitled.

Respectfully submitted,

**MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.**

By:    /s/ James M. Cleary, Jr.
     James M. Cleary, Jr.
     Federal I.D No. 15499
     State Bar No. 00783838
     808 Travis, Suite 1100
     Houston, Texas 77002
     Telephone: (713) 632-1700
     Facsimile: (713) 222-0101
     Email:  cleary@mdjwlaw.com

**ATTORNEY-IN-CHARGE FOR DEFENDANT,
INDUSTRIAL SALES & SERVICES, LLC**

**OF COUNSEL:**
MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.
Elizabeth Mata Kroger
Federal I.D. No. 29713
State Bar No. 13184385
*kroger@mdjwlaw.com*
808 Travis, Suite 1100
Houston, Texas 77002
Telephone:    (713) 632-1700
Facsimile:    (713) 222-0101

Steven W. Watkins *Admitted pro hac vice*
BRADLEY DEVITT HAAS & WATKINS, P.C.
2201 Ford Street
Golden, Colorado 80401
303.384.9228 (Telephone)
303.384.9231 (Fax)
steve@goldenlawyers.com

## CERTIFICATE OF WORD COUNT

This document complies with the word count limitations contained in the Court's Procedures, because it contains 4,661 words, excluding any subparts exempted by Court Procedure 16.c.

                */s/ James M. Cleary, Jr.*
                James M. Cleary, Jr.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 29, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District Texas by using the CM/ECF system.

Curt Hesse                                    *Via E-Mail:  curt@mooreandassociates.net*
Melissa Moore                              *Via E-Mail: melissa@mooreandassociates.net*
Moore & Associates
Lyric Centre
440 Louisiana Street, Suite 1110
Houston, Texas 77002


*/s/ James M. Cleary, Jr.*
James M. Cleary, Jr.

**17**