United States District Court
Southern District of Texas
**ENTERED**
April 01, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| **ROSENDO JOSEPH ROSALES, III, and LEO C. BUTLER, JR.,** § § § | |
| **Plaintiffs,** § § | |
| v. § § | Civil Action No. 6:20-CV-00030 |
| **INDUSTRIAL SALES & SERVICES, LLC,** § § § § | |
| **Defendant.** § | |

## FINDINGS OF FACT & CONCLUSIONS OF LAW

Plaintiffs Rosendo Joseph Rosales, III and Leo Cornelius Butler, Jr. are former employees of Industrial Sales & Services, LLC ("ISS"), a Colorado corporation. ISS was formed out of its sister company, Alpine Site Services Inc. ("Alpine") in 2009. During their employment with ISS, the Plaintiffs were not paid overtime wages.

Rosales and Butler are now suing ISS under the Fair Labor Standards Act ("FLSA"), asserting that ISS withheld overtime pay to which they are entitled. ISS argues that Rosales and Butler are exempt from the FLSA's overtime requirement because of the Motor Carrier Act ("MCA") exemption and therefore, were not entitled to overtime pay. On September 30, 2022, this Court issued an Order denying summary judgment due to an unresolved fact question necessary for determining whether ISS can avail itself of the MCA exemption. (Dkt. No. 96). The Parties have since stipulated to all relevant facts. (Dkt. No. 122).

Pending before the Court is Defendant ISS's Motion for Judgment, (Dkt. No. 125). After careful consideration, the Court **GRANTS** ISS's Motion.

## I.   FINDINGS OF FACT[1]

1. ISS manufactures engineered screwpiles, a foundation system used in construction applications. ISS workers are engaged by a sister company, Alpine, to manufacture the screwpiles. (Dkt. No. 122 at 1).

2. ISS manufactures screwpiles in two facilities called "yards," located in Commerce City, Colorado and Edna, Texas. (*Id.*).

3. Alpine sells, delivers, and installs the screwpiles at jobsites across the United States, including Louisiana, Mississippi, New Jersey, New Mexico, New York, Ohio, Oklahoma, Pennsylvania, and Wyoming. (*Id.*).

4. Once manufactured, ISS employees load and secure the screwpiles onto 45-foot flat-deck trailers for transport to Alpine's jobsites across the country, where they are installed. The trailers travel out of state on a regular basis, and the majority of the jobsites are outside of Colorado and Texas. (*Id.* at 1–2).

5. Alpine is the only company for which ISS manufactures screwpiles. ISS does not perform these services, or any other services, for any other company. (*Id.* at 2).

6. The flatbed trailers used to transport the screwpiles weigh more than 10,001 pounds, per gross vehicle weight ratings ("GVWRs"). (*Id.*).

7. Alpine is a private motor carrier and therefore subject to Department of Transportation ("DOT") rules for transporting goods, and the transportation of such goods is done to further their commercial enterprise. (*Id.*).

8. Plaintiffs, who worked at both the ISS yard in Texas and at Alpine's job sites, were responsible for loading and securing screwpiles onto trailers for transport when they worked in the yard, together with other yard workers. (*Id.*).

9. When they worked in the yard in Texas, Plaintiffs also loaded and secured trailers with other equipment for the jobsites, including cap plates, which are welded to installed screwpiles at the jobsite. (*Id.*).

10. Plaintiffs' safety-affecting duties also included checking trailers for safety items, inspecting lights and tires, inspecting for any other damage that could undermine

---

[1]   The Parties have stipulated to the facts that have been included in the Court's findings. (Dkt. No. 122).

their safe operation, as well as assisting drivers in backing trailers into position for loading. (*Id.*).

11.   Rosales began working for ISS in August 2017 as a laborer at ISS's Texas yard. Rosales soon transitioned from laborer to welder. As part of his job duties, Rosales could be called upon to load trailers, secure loads for transport, and check trucks for safety items. (*Id.*).

12.   Rosales testified he performed safety-affecting duties regularly, including securing screwpile loads on trailers for safe travel approximately one or two times per week. (*Id.*).

13.   Butler worked as a welder for Alpine for two months, before transitioning to ISS's Texas yard in April 2018. As part of his job duties, Butler could be called upon to load trailers, secure loads for transport, and check trucks for safety items. (*Id.* at 3).

14.   Butler loaded screwpiles and pier caps onto trailers with a forklift or skid steer approximately weekly. He secured loads for transport approximately weekly. In addition to loading and securing, at least weekly Butler checked trailers to ensure proper functioning of safety items such as lights, brakes, tires, and horns. (*Id.*).

15.   The flatbed trailers on which Plaintiffs loaded and secured items and which Plaintiffs checked for safety items had a GVWR of 10,001 pounds or more. (*Id.*).

16.   The loaded trailers traveled in interstate commerce on interstate highways. (*Id.*).

17.   Improper loading and securing of these trailers could cause catastrophic damage to the trailer, the tractor, the driver, other vehicles on the public roads, and the general public. The size and weight of the loads presented a danger to safety on public roads; if the loads became untethered or dislodged in transit, they could cause an accident resulting in injury, including death. (*Id.*).

18.   Plaintiffs, as part of their job duties, were expected to and did in fact load and secure screwpiles and other equipment onto flatbed trailers weighing more than 10,001 GVWR for transport to Alpine's jobsites across the country, and this transport included transportation across state lines on the public highways. (*Id.*).

19.   Plaintiffs performed these safety-affecting job duties on at least a weekly basis. (*Id.*).

20.   Plaintiffs' loading and securing duties had a significant effect on the safety of vehicles in interstate transportation inasmuch as improper loading or securing could cause catastrophic damage to the flatbed, the tractor, the driver, and other vehicles on the road, and the general public. (*Id.*).

21. Alpine was incorporated in 1998 and is wholly owned by non-party Shelly Gochis. Shelly Gochis is the President of Alpine, while non-party Stacey Easterday is the Vice President and non-party Bernard Gochis is the Secretary and Treasurer of Alpine. From the beginning of the company's existence, Alpine has classified employees who performed safety-affecting duties as exempt under the MCA exemption. (*Id.* at 4).

22. Prior to 2009, yard workers like Plaintiffs were paid directly by Alpine. In 2009, Alpine spun ISS off as the payroll employer of workers located at the manufacturing yards for reasons associated with workers compensation and jobsite safety ratings. (*Id.*).

23. ISS is a single-member LLC and Bernard Gochis is the sole owner and managing member. Upon ISS's founding, the workers responsible for loading and securing trailers for transport to Alpine's jobsites, who up to that point had been employed by Alpine, became ISS payroll employees. Nothing about the yard employees' job duties, supervisors, or overall management changed as part of that corporate reorganization. Accordingly, ISS, as the payroll employer, continued to classify those employees as exempt. (*Id.*).

24. ISS does not maintain a separate corporate office and does not have separate administrative employees. Instead, ISS relies on Alpine's corporate office and Alpine's management and administrative employees to provide those services, including but not limited to human resources services, payroll services, and accounting services. (*Id.*).

25. ISS bills Alpine hourly for the labor of ISS's employees. (*Id.*).

26. Alpine and ISS have a centralized management structure and all management personnel are employees of Alpine. (*Id.*).

27. Alpine employees, including Alpine Vice President Stacey Easterday and Office Manager Jaime Hawkins, are responsible for interviewing, hiring, disciplining, and firing ISS employees. (*Id.* at 5).

28. Alpine employees, including Jaime Hawkins, set the rate of pay for ISS workers, and that rate of pay is set to be consistent with employees performing similar safety-affecting duties for Alpine. (*Id.*).

29. Alpine employees, including Stacey Easterday and Jaime Hawkins, set the schedules for ISS employees, including staffing projects in the yards depending on the volume of business being done at any given time. (*Id.*).

30. Alpine employees, including Stacey Easterday and Jaime Hawkins, set the terms and conditions of employment of ISS payroll employees, which are consistent with the terms and conditions for employees performing similar safety-affecting duties for Alpine. (*Id.*).

31. Alpine employee Jaime Hawkins is responsible for maintaining employment records for ISS's payroll employees. Those records are stored in Alpine's office in Colorado, in Alpine's files and on its computer servers. (*Id.*).

32. ISS payroll employees are directly and indirectly supervised by Alpine employees. Plaintiffs were both directly supervised by Matt Matula, an Alpine employee. Rosales was also supervised by ISS Manager Rodney Robertson, while Butler was supervised by Alpine Manager Travis Guillory. Managers Matula, Robertson, and Guillory all reported up to other Alpine managers, including Stacey Easterday, Jaime Hawkins, Bernie Gochis and Alpine Manager Michael Gochis. (*Id.*).

33. Managers Matula, Robertson, and Guillory all used Alpine-issued email addresses and cell phones, drove Alpine-owned vehicles, and wore Alpine-branded clothing. (*Id.*).

34. ISS payroll employees wear Alpine-branded and Alpine-owned t-shirts and hardhats. (*Id.* at 6).

35. Plaintiffs were payrolled by Alpine when they worked at Alpine's jobsites and by ISS when they worked at the yard. (*Id.*).

36. Both Plaintiffs filed opt-in consents to join a separate lawsuit filed by their counsel against Alpine, which was pending in the Southern District of Texas, Houston Division. *Kelley v. Alpine Site Services, Inc.*, No. 4:19-CV-01152 (S.D. Tex.).[2] In *Kelley*, the plaintiffs conceded that Alpine is a motor private carrier for purposes of the MCA exemption. On February 7, 2023, final judgment was issued in favor of Alpine in Kelley with the court finding that the plaintiffs in that matter were covered by the MCA exemption and not entitled to overtime. (*Id.*).

37. Alpine and ISS were joint employers of Plaintiffs Rosales and Butler for the time periods made the basis of this litigation. (*Id.*).

38. In April 2009, the Department of Labor ("DOL") investigated Alpine's pay practices. The investigation reviewed every position at Alpine for the preceding two years, including those yard employees who performed safety-affecting duties as described above. Thus, although ISS was created in the same year as the investigation, its payroll employees were examined as part of the 2009 Alpine DOL audit. (*Id.*).

39. The investigator determined that Alpine properly compensated the majority of its employees and found violations as to only nine employees. Those nine employees received back wages, not because the MCA exemption did not apply, but

---

[2] *See Kelley v. Alpine Site Servs., Inc.*, No. 4:19-CV-01152, 2023 WL 1437702 (S.D. Tex. Feb. 1, 2023) (Hanks, J.), *appeal docketed*, No. 23-20290 (5th Cir. June 19, 2023).

because Alpine did not adequately document the job duties those employees performed. (*Id.*).

40. To document compliance going forward, Alpine discussed several options with the DOL investigator. Based on these discussions, Alpine established a process for employees to complete a weekly report of the safety-affecting duties they performed. That report, which Alpine and ISS call the "Employee Work Report," was submitted to the DOL for its review. Receiving no negative feedback from the DOL, Alpine and ISS implemented the Employee Work Reports and asked their employees to complete them on a weekly basis. (*Id.* at 6–7).

41. The practice of completing Employee Work Reports continued throughout the relevant time period and to the present. Plaintiffs completed the Employee Work Reports during their employment with ISS. (*Id.* at 7).

42. Alpine was audited by the DOL twice more, once in 2010 and once in 2014, and the DOL found no violations, including as to those employees classified as exempt pursuant to the MCA exemption. (*Id.*).

43. Alpine and ISS give full disclosure in job postings and in candidate interviews that job positions that perform safety-affecting duties will not be paid an overtime premium, but instead will receive straight time for hours over 40. (*Id.*).

44. New hires are also made aware of this policy as part of their new hire paperwork, which explains the legal basis of the MCA exemption and the safety-affecting duties the employees are expected to perform. (*Id.*).

45. Alpine office staff also keep a direct line of communication with Alpine and ISS employees, and if employees have questions about the MCA exemption, they are free to ask office staff. (*Id.*).

46. New hires at both Alpine and ISS are required to take and pass a DOT physical, which is required for any person who will drive a vehicle weighing 10,001 pounds GVWR or more. New hires also complete safety training, which includes training concerning load securement and DOT inspections. (*Id.*).

47. ISS continues to conduct regular internal audits of its Employee Work Reports. (*Id.* at 8).

48. ISS and Alpine also reach out to third-party DOT consultants as appropriate for guidance on DOT rules and regulations, and Alpine belongs to the Colorado Motor Carriers Association, which provides educational training and information to its members. Alpine has sought legal opinions as to whether its classification of its employees as exempt is proper, including from a retired federal magistrate judge concerning the applicability of the MCA exemption to its workforce. (*Id.*).

49.   Alpine is and has been at all relevant times a "motor private carrier" for purposes of the MCA exemption.  (*Id.*).

50.   Plaintiff Rosales worked for ISS from August 28, 2017 to July 31, 2019.  Plaintiff Butler worked for ISS from April 23, 2018 to September 17, 2020.  (*Id.*).

## II.   CONCLUSIONS OF LAW

### A.   FLSA COVERAGE

51.   Subject to certain, limited exemptions, the FLSA requires employers to pay employees 1.5 times the employees' regular rate of pay for all hours worked over 40 in a workweek.  29 U.S.C. § 207(a)(1).

52.   ISS is an "employer" of Plaintiffs for purposes of the FLSA.  *See id.* § 203(d).

### B.   MCA EXEMPTION

53.   The MCA exemption to the FLSA "extends to those classes of employees and those only who: (1) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to [the Secretary of Transportation's] jurisdiction under section 204 of the Motor Carrier Act . . . and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act."  29 C.F.R. § 782.2(a) (citations omitted); *see also* 29 U.S.C. § 213(b)(1).

54.   The exemption applies to employees of motor carriers and motor private carriers who perform safety-affecting duties on vehicles with GVWRs of more than 10,000 pounds that travel in interstate commerce.  *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 579 (5th Cir. 2018).

55.   Application of the exemption "depends both on the class to which his employer belongs and on the class of work involved in the employee's job."  29 C.F.R. § 782.2(a).

56.   ISS bears the burden of establishing that the MCA exemption applies to Plaintiffs by a preponderance of the evidence.  *Olibas v. Barclay*, 838 F.3d 442, 448 (5th Cir. 2016); *Edwards v. 4JLJ, LLC*, No. 2:15-CV-00299, Dkt. No. 311 at 11–12 (S.D. Tex. Feb. 25, 2019) (Ramos, J.) (jury charge).

### 1. **Employer's Carrier Status**

57. The Secretary of Transportation's jurisdiction under Section 204 of the Motor Carrier Act extends to "common and contract carriers by motor vehicle as provided in that act[.]" 29 C.F.R. § 782.1(b).

58. "To be subject to the Secretary of Transportation's jurisdiction pursuant to the MCA, a motor carrier must be engaged in interstate commerce." *Siller v. L & F Distribs., Ltd.*, 1997 WL 114907, at *1 (5th Cir. 1997) (per curiam).

59. A motor carrier is "a person providing motor vehicle transportation for compensation." 49 U.S.C. § 13102(14).

60. A motor private carrier is "a person, other than a motor carrier, transporting property by motor vehicle when—(A) the transportation is as provided in section 13501 of this title; (B) the person is the owner, lessee, or bailee of the property being transported; and (C) the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise." 49 U.S.C. § 13102(15).

61. For purposes of the MCA exemption, non-carriers who operate as joint employers with carriers are subject to the Secretary's jurisdiction over carriers. *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 472–73 (5th Cir. 2010), *abrogated on other grounds by Amaya v. NOYPI Movers, LLC*, 741 F. App'x 203, 205 n.2 (5th Cir. 2018).

62. Non-carriers who operate as joint employers with a motor private carrier satisfy the first requirement of the MCA exemption regarding the class to which an employer belongs. *See id*, at 472 (finding that "[w]hile Fifth Circuit precedent is limited on this issue, other courts have held that a staff leasing company who provides employees for a motor carrier and operates as a joint employer with the carrier meets the requirements of 29 C.F.R. § 782.2(a)(1)"); *see also Moore v. Universal Coordinators, Inc.*, 423 F.2d 96, 100–01 (3d Cir. 1970) (finding that the employees should be considered employees of the private motor carrier); *Tidd v. Adecco USA, Inc.*, No. 1:07-CV-11214, 2010 WL 996769, at *2–3 (D. Mass. Mar. 16, 2010) (holding that "the overtime wage claims against the staffing agency defendants as joint employers are foreclosed by the Motor Carrier Act exemption"); 29 C.F.R. § 782.2(a).

### 2. **Character of Employee's Activity**

63. "The MCA exemption is available only to certain types of employees who perform a specific type of work. Only employees who—either 'wholly or in part'—engage in work as 'drivers, driver's helpers, loaders, [or] mechanics' may be exempt." *Amaya*, 741 F.App'x at 205 (quoting 29 C.F.R. § 782.2(b)(2)(i)) (alteration in original). "The [employees' safety-affecting] responsibility must not be a casual or occasional part of an employee's activities" and "the court must discern whether [the employees' activities] directly affects the safety of operation of motor vehicles on the public highways in

transportation in interstate commerce." *Id.* (cleaned up). "The proper application of these requirements entails an analysis that is both specific and general." *Id.*

64. "As a general rule, if the bona fide duties of the job performed by the employee are in fact such that he is (or . . . is likely to be) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities . . . he comes within the exemption in all workweeks when he is employed at such job." 29 C.F.R. § 782.2(b)(3). "Where this is the case, the rule applies *regardless of the proportion of the employee's time or of his activities which is actually devoted to such safety-affecting work in the particular workweek*, and the exemption will be applicable even in a workweek when the employee happens to perform no work directly affecting 'safety of operation.'" *Id.* (emphasis added).

65. It is well-settled that it is the character of the activities, rather than the proportion of the employee's time or activities that determines the jurisdiction of the Secretary under the MCA. *Songer*, 618 F.3d at 473–74; *see also Barefoot v. Mid-Am. Dairymen, Inc.*, 1994 WL 57686, at *3 (5th Cir. 1994) (per curiam) (quotations omitted). An individual employee need not actually or consistently engage in duties affecting the safety of interstate activities. *E.g.*, *Songer*, 618 F.3d at 475–76 (finding reasonable expectation of engaging in interstate commerce existed, although four plaintiffs never drove interstate, and just 2.75 percent of the employer's loads were transported across state lines).

66. When determining whether an employees' "work involves engagement in activities consisting wholly or in part of a class of work . . . directly affecting the safety of operation of motor vehicles on the public highways," 29 C.F.R. 782.2(b)(2), "courts do not merely rely on 'the name given to [the] position nor that given to the work' done." *Amaya*, 741 F. App'x at 205–06 (quoting *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 283 (5th Cir. 2014), *abrogated on other grounds by Amaya*, 741 F. App'x at 205 n.2).

67. The exemption typically applies to four classes of employees—(1) drivers, (2) driver's helpers, (3) loaders, and (4) mechanics—if their work directly affects the safety of the operation of motor vehicles in transportation in interstate commerce. 29 C.F.R. § 782.2(b)(1).

68. For purposes of the MCA exemption, a "loader" is an employee of a carrier "whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country." 29 C.F.R. § 782.5(a). A loader's duties "will usually also include unloading and the transfer of freight between the vehicles and the warehouse, but he engages, as a 'loader,' in work directly affecting 'safety of operation' so long as he has responsibility when such motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate . . .

commerce will not be jeopardized." *Id.*; *see also Wirtz v. C & P Shoe Corp.*, 336 F.2d 21, 29 (5th Cir. 1964) ("[A loader] share[s] in the exercise of discretion as to the manner in which the loading [is] done."). An employee need not devote all or even the majority of his time to safety-affecting activities to qualify as a loader. *See Levinson v. Spector Motor Serv.*, 330 U.S. 649, 685, 67 S.Ct. 931, 948–49, 91 L.Ed. 1158 (1947).

### 3. Application

69. ISS acts as a joint employer with Alpine and, thus, belongs to the class of carrier subject to the Secretary's jurisdiction. (Dkt. No. 122 at 6). This satisfies the first prong of the MCA exemption. *See Songer*, 618 F.3d at 472–73.

70. Plaintiffs, as part of their job duties, were responsible for loading and securing screwpiles onto 45-foot trailers weighing more than 10,001 pounds per GVWRs regularly in the ordinary course of their work performance. (Dkt. No. 122 at 1–3). Their job duties also included checking trailers for safety items, including inspecting lights and tires, and inspecting for any other damage that could undermine their safe operation, as well as assisting drivers in backing trailers into position for loading. (*Id.* at 2–4).

71. The Parties have stipulated that "Plaintiffs' loading and securing duties had a significant effect on the safety of vehicles in interstate transportation inasmuch as improper loading or securing could cause catastrophic damage to the flatbed, the tractor, the driver, and other vehicles on the road, and the general public." (*Id.* at 3). They also stipulate that "Plaintiffs performed these safety-affecting job duties on at least a weekly basis." (*Id.*).

72. These job duties were not so trivial, casual, or occasional as to not affect the safety of ISS's operations. *Compare Levinson*, 330 U.S. at 680–82, 67 S.Ct. at 946–48, *with Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 708, 67 S.Ct. 954, 960, 91 L.Ed. 1184 (1947) ("[T]he mere handling of freight at a terminal, before or after loading, or even the placing of certain articles of freight on a motor carrier truck may form so trivial, casual or occasional . . . part of an employee's activities, or his activities may relate only to such articles or to such limited handling of them, that his activities will not come within the kind of 'loading' which . . . affects safety of operation.").

73. The character of work involved in Plaintiffs' jobs satisfies the second prong of the MCA exemption. *See Songer*, 618 F.3d at 473–75 (explaining that employees whose positions directly affect motor vehicle safety in the transport of property in interstate commerce engage in the class of work covered by the MCA exemption); *Amaya*, 741 F. App'x at 206 (noting that the Fifth Circuit does "not require a particularly high concentration of qualifying work in order to meet the MCA" exemption requirements) (citing *Morris v. McComb*, 332 U.S. 422, 433–34, 68 S.Ct. 131, 136–37, 92 L.Ed. 44 (1947).

74.	ISS has met its burden of proof. *See Olibas*, 838 F.3d at 448. The MCA exemption applies to Plaintiffs. Plaintiffs were properly classified as exempt pursuant to the MCA exemption.

### C.  SMALL VEHICLE EXCEPTION

75.	The small vehicle exception to the MCA exemption applies if Plaintiffs performed safety-affecting duties on vehicles with GVWRs of fewer than 10,000 pounds. *Gomez v. Loomis Armored US, LLC*, No. 5:16-CV-00931, 2017 WL 7052254, at *4–5 (W.D. Tex. Oct. 26, 2017); *see also* SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110–244, § 306(a), (c), 122 Stat. 1572, 1620–21.

76.	Plaintiffs bear the burden of showing that the small vehicle exception applies. *Carley*, 890 F.3d at 580; *Rychorcewicz v. Welltec, Inc.*, 768 F. App'x 252, 256 (5th Cir. 2019) (per curiam).

77.	The small vehicle exception must be established on a workweek-by-workweek basis. *Cooper v. Noble Casing, Inc.*, No. 1:15-CV-01907, 2016 WL 6525740, at *4–5 (D. Colo. Nov. 3, 2016).

78.	If the small vehicle exception applies to Plaintiffs, they are entitled to 1.5 times their regular rate for hours worked over 40 in a workweek, for only those workweeks in which Plaintiffs prove they performed covered small-vehicle work. *See Moore v. Performance Pressure Pumping Servs., LLC*, No 5:15-CV-00346, 2017 WL 1501436, at *10 (W.D. Tex. Apr. 26, 2017).

79.	Plaintiffs did not establish that they performed any qualifying small vehicle work in any workweek during the relevant limitations period.

80.	Because the MCA exemption applies to Plaintiffs and the small vehicle exception does not, Plaintiffs are not entitled to 1.5 times their regular rate for hours worked over 40 in a workweek.

81.	Plaintiffs are not entitled to any recovery of damages with respect to their claims for overtime pay under the FSLA and ISS is entitled to judgment in this action.

### III.  CONCLUSION

Finding that ISS is entitled to judgment in its favor, the Court **GRANTS** Defendant ISS's Motion for Judgment, (Dkt. No. 125). Plaintiffs' claims are **DISMISSED WITH PREJUDICE**. A Final Judgment will be entered separately.

It is SO ORDERED.

Signed on March 30, 2024.

                                                                                   **DREW B. TIPTON**
                                                                   **UNITED STATES DISTRICT JUDGE**